**TRIBUNE PUBLISHING COMPANY,**
**Plaintiff–Appellee,**

**v.**

**UNITED STATES of America,**
**Defendant–Appellant.**

**Nos. 86–3734, 86–3987 and 86–3988.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1987.

Decided Jan. 6, 1988.

Joseph H. Trethewey, Trethewey, Brink, Todd & Clayton, Seattle, Wash., for plaintiff-appellee.

Gary D. Gray, Asst. U.S. Atty., Tax Div., for defendant-appellant.

Before FLETCHER and NORRIS, Circuit Judges, and LYNCH,[*] District Judge.

NORRIS, Circuit Judge:

This case involves the tax treatment of settlement proceeds of securities fraud litigation arising out of an I.R.C. § 368 tax-free reorganization.[1]

### I

In 1969, Tribune Publishing Co. (Tribune), the taxpayer, owned 6,109 shares, or 7.1 percent, of the outstanding stock of West Tacoma Newsprint Co. (Newsprint), a producer of newsprint. Tribune's basis in the stock was $619,462. That year, Newsprint was acquired by Boise Cascade Corp. (Boise Cascade) in a tax-free reorganization —specifically, a merger within the scope of I.R.C. § 368(a)(1)(A). Tribune received 41,-476 shares of Boise Cascade stock in the merger in return for its Newsprint shares. At the time, Boise Cascade stock had a market price of $74.50 per share, making the market value of the stock Tribune received in exchange for its Newsprint stock approximately $3.1 million.

After the merger, the market price of Boise Cascade stock fell precipitously following reports that Boise Cascade had failed to disclose material facts about its financial condition. As a result, Tribune and others sued Boise Cascade for securities fraud. In 1977, as part of a settlement of the litigation, Tribune received from Boise Cascade $451,000 in cash plus promised discounts on newsprint purchased by Tribune over an eight-year period. In 1978 and 1979, Tribune received newsprint dis-

counts of $107,000 and $127,000 respectively.

In 1977, Tribune reported $121,500 of the $451,000 cash portion of the settlement as a dividend under I.R.C. § 356(a)(2) and the balance of the cash as a non-taxable return of basis. In 1978 and 1979, Tribune further reduced its basis by the amount of the discounts it received on newsprint purchased.

The government, disagreeing with Tribune's tax treatment of both the cash and discount portions of the settlement, imposed deficiency assessments. Tribune paid the assessments in full and brought this action for a refund. The district court held in Tribune's favor in all respects.[2] The government timely appeals. We affirm in part and reverse in part. We hold that (1) because the proceeds of the settlement are properly characterized as "boot" of the original tax-free reorganization, Tribune is entitled to treat a portion of the proceeds as a dividend under I.R.C. § 356(a)(2); (2) Tribune is not entitled to treat the balance of the proceeds as a non-taxable return of basis; and (3) the IRS is entitled to impute a part of the settlement proceeds as interest under I.R.C. § 483.

### II

#### A

The parties agree that whether a claim is resolved through litigation or settlement, the nature of the underlying action determines the tax consequences of the resolution of the claim. *See* Brief for the Appellant at 8; Opening Brief for the Appellee at 10; *Spangler v. Commissioner*, 323 F.2d 913, 916 (9th Cir.1963) ("In determining whether receipts are taxable as ordinary income or return of capital it is immaterial whether taxpayer effected collection amicably or by resolving a dispute through com-

---

[*] Honorable Eugene F. Lynch, United States District Judge for the Northern District of California, sitting by designation.

1. All I.R.C. citations are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue.

2. The district court's rulings, all of which involved the application of the Internal Revenue Code to undisputed facts, are questions of law which we review de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

promise or litigation. It is the nature of the underlying claim that controls and not the manner of collection."). It is not disputed that Tribune's underlying claim in the securities fraud litigation was that the market value of the Boise Cascade stock that Tribune received in 1969 pursuant to the tax-free reorganization was inflated because of Boise Cascade's failure to disclose material facts. Nor is there any dispute that the purpose of Tribune's fraud action was to recoup the difference between the actual value of the Boise Cascade stock it received and the price Tribune effectively paid for the stock, measured in this case by its market value at the time of the merger. At this point in the analysis, however, Tribune and the government part company.

Applying the foregoing principle, Tribune argues that the settlement proceeds should be treated as boot of the original transaction. Thus Tribune insists that the transaction should be viewed as though it received not only 41,476 shares of Boise Cascade stock in exchange for its Newsprint stock, but also $451,000 cash and the newsprint discounts as additional consideration. Because the underlying transaction in this case was a tax-free reorganization under I.R.C. § 368(a)(1)(A), Tribune contends the proceeds should be treated as boot of the original transaction under I.R.C. § 356(a)(2). The government argues in response that I.R.C. § 356(a)(2) cannot govern the tax treatment of settlement proceeds because, under I.R.C. § 354(a)(1), the recognition rules for tax-free reorganizations are not triggered unless the exchange is "in pursuance of the plan of reorganization." The government contends that the settlement proceeds received by Tribune were received pursuant to a settlement agreement, not a merger agreement, and that therefore the settlement proceeds cannot be considered as distributed "in pursuance of the plan of reorganization" under I.R.C. § 354(a)(1).

■ In our view Tribune clearly has the better of the argument on this issue. The government's position misperceives the nature of our inquiry. There is no question that the cash and newsprint discounts were received pursuant to a settlement. The question before us, however, is how to characterize these settlement proceeds. The test for characterizing proceeds of litigation is stated most simply as " 'In lieu of what were the damages awarded?' " *Raytheon Production Corp. v. Commissioner*, 144 F.2d 110, 113 (1st Cir.) (citations omitted), *cert. denied* 323 U.S. 779, 65 S.Ct. 192, 89 L.Ed. 622 (1944).[3] The answer to that question in this case is that the settlement proceeds were received by Tribune in lieu of the additional consideration that Tribune would have received had it bargained with knowledge of the true value of Boise Cascade stock rather than the market value which was allegedly inflated by Boise Cascade's failure to disclose material facts. We took just this approach in *Spangler v. Commissioner* to determine the tax treatment of proceeds received by a plaintiff who claimed that she had been induced by fraud to sell her stock. Applying the principle that the nature of the underlying claim controls the tax treatment of the proceeds of litigation, we held that money received by the plaintiff in lieu of dividends she would have received had she not sold the stock was taxable as dividend income rather than as a return of capital. 323 F.2d at 916–17.

Similarly, in *Victor E. Gidwitz Family Trust v. Commissioner*, 61 T.C. 664 (1974), the Tax Court, considering the tax treatment of money received in the settlement of an action for damages for failure to deliver options in a merger, stated, "The taxability of the settlement is controlled by the nature of the litigation.... The nature of the litigation is, in turn, controlled by

---

3. In *Raytheon*, for example, the court determined whether the settlement of an antitrust claim should be considered as damages for injury to business good will, which is treated as a return of capital, or damages for lost profits, which is treated as ordinary income. Raytheon had alleged that defendant RCA had completely destroyed Raytheon's radio tube business through various anticompetitive acts. 144 F.2d at 113. Concluding that this claim went beyond an action for lost profits to represent a claim for the destruction of the business and goodwill, the court decided that recovery represented a return of capital. *Id.* at 114.

the origin and character of the claim which gave rise to the litigation." 61 T.C. at 673 (citations omitted). The court concluded that because the underlying claim arose out of the purported inadequacy of consideration received in the merger, the settlement proceeds represented additional consideration that the taxpayers would have received in the underlying merger. *See also Megargel v. Commissioner*, 3 T.C. 238, 243 (1944).

In sum, we engage in the fiction of treating the settlement proceeds received by Tribune as if they had been received as part of the original transaction. As noted above, the underlying transaction was the merger of Boise Cascade and Newsprint, a tax-free reorganization under I.R.C. § 368(a)(1)(A).[4] I.R.C. § 354 provides for the nonrecognition of gain or loss from such transactions.[5] Consideration other than the stock of a corporate party to the reorganization, such as the cash and discounts at issue in this case, may also be transferred without destroying the nonrecognition of the stock portion of the transaction. However, when separate consideration, known as "boot," is present, gain is recognized under I.R.C. § 356(a)(1) to the extent of the boot.[6] I.R.C. § 356(a)(2) provides that if boot has the effect of the distribution of a dividend, then the distribu-

tee may treat the boot as a dividend to the extent of its ratable share of the undistributed earnings and profits of the corporation.[7] When I.R.C. § 356 is applied to this case, the settlement proceeds should be treated as dividend income to the extent of Tribune's ratable share of Newsprint's retained earnings. Thus, the district court correctly held that Tribune was entitled to treat a portion of the settlement proceeds as dividend income.[8]

**B**

The district court further ruled that Tribune would be permitted to treat the remainder of the settlement proceeds, consisting of the remaining cash and the newsprint discounts, as a non-taxable return of basis until its basis in the Newsprint stock was exhausted.[9] The government contends that this treatment is incorrect because I.R.C. § 356(a)(1) provides that gain in a reorganization, other than gain attributable to dividends under I.R.C. § 356(a)(2), must be recognized to the extent of boot received.[10] Tribune responds that treating the remaining boot as a return of basis is correct under *Burnet v. Logan*, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931), because the total amount of Tribune's settlement recovery was uncertain. According to Tribune, the uncertainty arose because a substantial part of the settlement was contingent on

---

4. This is conceded by the government. Brief for the Appellant at 3–4, 16.

5. I.R.C. § 354(a)(1) provides:
   No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

6. I.R.C. § 356(a)(1) provides in part:
   If ... the property received in the exchange consists ... of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

7. I.R.C. § 356(a)(2) provides:
   If an exchange is described in paragraph (1) but has the effect of the distribution of a dividend, then there shall be treated as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the

undistributed earnings and profits of the corporation.... The remainder, if any, of the gain recognized under paragraph (1) shall be treated as gain from the exchange of property.

8. Because the parties dispute only whether I.R.C. § 356 applies, not the result if I.R.C. § 356 does apply, we need not address the difficult question of when boot should be treated as dividend. *See Clark v. Commissioner*, 86 T.C. 138, 140 (1986), *aff'd*, 828 F.2d 221 (4th Cir. 1987) (comparing *Shimberg v. United States*, 577 F.2d 283 (5th Cir.1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979), with *Wright v. United States*, 482 F.2d 600 (8th Cir. 1973)).

9. Tribune's basis in the Boise Cascade stock was the transfer basis from the Newsprint stock. I.R.C. § 358.

10. Such gain is treated as capital gain under I.R.C. § 1001(a) and is taxed at capital gains rates to the extent the gain exceeds the taxpayer's basis in the property.

the amount of discounting it would receive on newsprint over the eight-year period. We must disagree with Tribune because we read *Burnet* to apply only if there is uncertainty as to whether the taxpayer will realize a profit from the transaction at issue; here it appears that Tribune realized a profit.

In *Burnet* the taxpayer owned stock in a corporation whose principal asset was an interest in a mine. The taxpayer sold the stock for cash plus a royalty on the ore extracted from the mine, and for several years reported her portion of the royalty payments as a non-taxable return of her basis in the stock. The Supreme Court approved this tax treatment because the royalty contract had "no ascertainable market value" making it unclear whether the taxpayer would ever profit from the transaction. The Court held that royalties from extracted ore could be apportioned first as return of capital and later as profit: "The liability for income tax ultimately can be fairly determined without resort to mere estimates, assumptions and speculation. When the profit, if any, is actually realized, the taxpayer will be required to respond." *Id.* at 412–13, 51 S.Ct. at 552. Thus, to determine whether *Burnet* applies, we first determine whether Tribune profited from the transaction as of the 1977 settlement.

■ In this case, the transaction, including the initial stock exchange and the settlement agreement, had both contingent and non-contingent elements. The non-contingent portion of the transaction included both the stock Tribune received and the lump-sum cash payment. Although Tribune at no point makes a claim as to the exact value of the Boise Cascade stock it received, the very lowest value that we can find in the record is Tribune's assertion in the underlying securities action that in July 1972, Boise Cascade stock was selling at approximately $10 per share. Plaintiffs' Opening Trial Brief at 2 (Excerpt of Record at 74). Even at $10 per share, Tribune's

41,476 shares would be valued at $414,760. In addition, Tribune received approximately $404,000 as part of the settlement.[11] Thus, using a figure as low as $10 for the value of the Boise Cascade stock, Tribune received approximately $818,760 in value in the merger transaction, exclusive of the indeterminate value of the newsprint discounts. Since Tribune's basis in its Newsprint stock was $619,462, Tribune clearly realized a profit from the combination of the Boise Cascade shares and the lump-sum payment. *Burnet* therefore is inapplicable because at the time of settlement it was known that Tribune had realized a gain from the transaction. To the extent of that gain, Tribune is required to pay capital gains taxes. *See* Treas.Reg. § 1.356–1. Of course, the extent of Tribune's gain depends upon the actual value of the Boise Cascade stock and is a determination which the district court must make on remand. Additionally, the yearly newsprint discounts, $107,000 in 1978 and $127,000 in 1979, should be characterized as boot of the transfer of Newsprint stock and therefore treated in each year as capital gain.

### III

■ We also consider whether the district court erred in holding that the government was not entitled to impute interest to the settlement proceeds under I.R.C. § 483. I.R.C. § 483 entitles the government to impute interest when deferred payments are made on "the sale or exchange of property."[12] Thus, the government is clearly entitled to impute interest to the newsprint discounts, as deferred settlement payments, from the date of the settlement to the dates Tribune purchased discounted newsprint. The more important question is whether the government is also entitled to impute interest to all of the settlement proceeds from the date of the merger to the date of the settlement.

The government argues that if we treat the settlement proceeds as boot of the

---

11. This amount represents the cash settlement of approximately $451,000 net legal fees of $47,-485.

12. I.R.C. § 483 applies to "any payment on account of the sale or exchange of property which

constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract." I.R.C. § 483(c)(1).

merger, *i.e.* as a promise made in 1969 to pay $451,000 in 1977 and to give newsprint discounts for eight years beginning in 1978, interest must be imputed from 1969. We disagree. Although we engage in the fiction that the settlement proceeds were boot of the 1969 merger for the purpose of characterizing the settlement proceeds, for the purpose of imputing interest we cannot ignore that Tribune actually received the additional consideration in 1977. Moreover, Tribune did not voluntarily contract to exchange its Newsprint stock for Boise Cascade stock plus a right to be paid cash and to receive newsprint discounts.[13] We conclude that interest should not be imputed to the settlement proceeds from the date of the merger to the date of the settlement.

We remand for the district court to calculate Tribune's tax burden, based on its capital gains and the interest imputed to the newsprint discounts, in accordance with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**13.** Although we make no judgment as to the merits of the underlying litigation, we also note that, for whatever reason, Tribune appears to have settled for far less than the difference between the actual value and the market value of the Boise Cascade stock it received in 1969.

Tribune also gave up the value of the use of that sum, *i.e.* interest, from 1969 to 1977.