ARTHUR DONN VINCENT and VALERIE J. VINCENT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vincent v. Commissioner
Docket No. 32790-88
United States Tax Court
T.C. Memo 1992-21; 1992 Tax Ct. Memo LEXIS 26; 63 T.C.M. (CCH) 1776; T.C.M. (RIA) 92021; January 9, 1992, Filed *26 Decision will be entered under Rule 155. Kevin G. Staker, Philip G. Panitz, Steven L. Staker, and Gregory R. Gose, for petitioners. Gordon L. Gidlund, for respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM OPINION Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax, Sections
Year
Deficiency
6651(a)(1) [1]
6653(a)
6653(a)(1)
6661
1980
$ 13,157
$ 3,278
$ 663
-- -- 1983
199,746
49,937
--
* $ 9,987
$ 49,937
After concessions by both parties, the sole issue for decision is whether the $ 390,000 received by Arthur Donn Vincent (hereinafter petitioner) in settlement of a lawsuit constitutes a gift *27 or inheritance excludable under section 102(a) or, in the alternative, an amount realized from the sale of a capital asset not in excess of the basis. We hold that the settlement amount is excludable from gross income under section 102(a) because it represents property acquired by gift or inheritance. The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and attached exhibits are incorporated herein. Petitioners resided in Camarillo, California, when they filed their petition. Arthur J. Vincent, petitioner's natural father, married Martha L. Vincent, petitioner's stepmother, in June 1956. On June 10, 1968, petitioner's father and stepmother received valid legal title, as joint tenants, to real property located at 2517 Modoc Road in Santa Barbara County, California (hereinafter the Modoc property). On August 25, 1978, petitioner's father executed a grant deed (hereinafter the 1978 Deed) purporting to deed the Modoc property to petitioner. The 1978 Deed was signed by petitioner's father and notarized by Notary Public Donna V. Thatcher. The 1978 Deed was recorded on May 30, 1980, with the Santa Barbara County Recorder's Office. Petitioner's *28 father died on June 5, 1980. On June 17, 1980, petitioner's stepmother filed a civil complaint with the Santa Barbara Superior Court to set aside the 1978 Deed. In the civil action, petitioner's stepmother was the named plaintiff and petitioner was the named defendant. On November 5, 1980, petitioner filed a cross-complaint with the Santa Barbara Superior Court naming his stepmother as the cross-defendant. The cross-complaint stated that petitioner had acquired an undivided half-interest in the Modoc property pursuant to the 1978 Deed. In the cross-complaint, petitioner requested a judicial determination be made as to his interests in the Modoc property. Petitioner also requested the court to order a partition of the Modoc property or, in the alternative, order the property be sold with a division of the proceeds according to the parties' respective interests. On September 15, 1982, petitioner filed general demurrers to the second, third, and fourth causes of action of his stepmother's Second Amended Complaint. On November 11, 1982, a stipulation striking the second, third, and fourth causes of action was filed with the Santa Barbara Superior Court as petitioner's stepmother *29 agreed that petitioner's demurrers were well-founded. On August 4, 1983, after 3 years and approximately 25 court filings relating to the pleadings of the Modoc property dispute, a stipulation notifying the Santa Barbara Superior Court of the parties' settlement was filed. On August 5, 1983, petitioner's stepmother signed the Compromise Settlement and Mutual Release. In the Compromise Settlement and Mutual Release, petitioner's stepmother agreed to pay petitioner $ 390,000, and both parties agreed to execute a stipulation for entry of judgment stating that the 1978 Deed was null and void. Petitioner agreed to execute and deliver a quitclaim deed in which he would disclaim any interest he might have in the Modoc property. The settlement stated that the covenants therein and the $ 390,000 payment to petitioner were "in lieu and instead of any inherited interest in the property" described in the 1978 Deed. The settlement agreement also stated that petitioner's stepmother would pay and hold petitioner harmless of all Federal estate and gift taxes and California inheritance and gift taxes. On September 27, 1983, in accordance with the settlement agreement, the parties stipulated *30 to a judgment declaring the 1978 Deed to be null and void. The fair market value of the Modoc property as of June 6, 1980, the day after petitioner's father died, was appraised at $ 1,275,000. The estate tax return (Form 706) valued the Modoc property at $ 1,300,000 with the 50 percent interest purportedly transferred by petitioner's father being valued at $ 650,000. Petitioner's stepmother was the personal representative for his father's estate. On behalf of the personal representative, attorney LeVone A. Yardum prepared the U.S. estate tax return for the estate. On Schedule G of the estate return, the Modoc property was listed as property transferred during the decedent's life and within 3 years of his death. A statement was attached to Schedule G which stated that the alleged 1978 transfer of the Modoc property was in dispute. Petitioner received $ 390,000 in taxable year 1983 pursuant to the Compromise Settlement and Mutual Release. Petitioners did not report the settlement amount as gross income on their 1983 Federal income tax return. Petitioners contend that the settlement payment is excludable pursuant to section 102 since it was in lieu of a gift or any inherited *31 interest in the Modoc property. Petitioners note that the $ 390,000 amount represents the value of a 50 percent interest in the Modoc property less estate, gift, and inheritance taxes attributable to the property. Respondent argues that the $ 390,000 should be includable in gross income as ordinary income received in settlement of an unrecognized claim to property. Respondent contends that the $ 390,000 was paid not in lieu of a gift or inheritance but rather as part of a nuisance settlement. Section 61(a) defines income as "all income from whatever source derived," subject to certain exclusions provided in the Code. Accordingly, any funds or other accessions to wealth received by a taxpayer are presumed to be gross income and are includable in the taxpayer's return, unless the taxpayer can demonstrate that the funds or accessions fit into one of the specific exclusions created by the Code. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-431 (1955); Getty v. Commissioner, 913 F.2d 1486, 1490 (9th Cir. 1990), revg. 91 T.C. 160 (1988). Petitioners argue that the $ 390,000 received from petitioner's stepmother fits *32 within the exclusion provided by section 102(a). Section 102(a) excludes from gross income "the value of property acquired by gift, bequest, devise, or inheritance." Petitioners did not acquire the $ 390,000 payment by gift, bequest, devise, or inheritance, but instead by the settlement of a lawsuit. Whether a dispute is resolved through litigation or settlement, the nature of the underlying action determines the proper tax consequences. Getty v. Commissioner, supra; Tribune Publishing Co. v. United States, 836 F.2d 1176, 1177 (9th Cir. 1988). The taxability of a settlement is controlled by the nature of the litigation. Raytheon Production Corp. v. Commissioner, 144 F.2d 110, 114 (1st Cir. 1944), affg. 1 T.C. 952 (1943); Victor E. Gidwitz Family Trust v. Commissioner, 61 T.C. 664, 673 (1974). The nature of the litigation is, in turn, controlled by the origin and character of the claim which gave rise to the litigation. United States v. Gilmore, 372 U.S. 39 (1963); Victor E. Gidwitz Family Trust v. Commissioner, supra.
In characterizing *33 the settlement payment for tax purposes, the test to be applied is stated most simply as "In lieu of what were the damages awarded?" Getty v. Commissioner, supra; Tribune Publishing Co. v. Commissioner, supra at 1178. In the instant case, petitioner's stepmother filed a complaint to set aside the 1978 Deed to the Modoc property. Petitioner filed a cross-complaint requesting a determination of his interests in the Modoc property. Petitioner also requested that the Santa Barbara Superior Court order a partition of the property or, in the alternative, order the property be sold with the proceeds to be divided according to the parties' respective interests in the Modoc property. After 3 years of legal posturing in the property dispute, and having twice had petitioner's general demurrers sustained against her, petitioner's stepmother agreed to a settlement in the amount of $ 390,000. The Compromise Settlement and Mutual Release specifically stated: NOW, THEREFORE, in consideration of the (1) mutual covenants herein contained; (2) the payment of the sum of $ 390,000 by MARTHA to DONN under the terms and conditions hereinafter set forth, (3) the execution *34 by MARTHA and DONN of a stipulation for entry of judgment in Santa Barbara Superior Court Action Number 132394 declaring the grant deed null and void and ordering MARTHA and DONN to bear their own costs; and (4) the execution and delivery by DONN to MARTHA of a deed quit claiming to MARTHA any interest DONN might have in the subject property with the covenants herein contained and payment of sums due hereunder in lieu and instead of any inherited interest in the property described in the aforesaid Grant Deed * * * [Emphasis added.]
In the instant case, the origin and character of the dispute involved the validity of a gratuitous transfer of real property to petitioner by his father pursuant to the 1978 Deed. The pleadings concerning the Modoc property transfer clearly indicate that the parties disputed the validity of the 1978 Deed. Petitioner's stepmother requested the court to declare the 1978 Deed null and void. Petitioner, in his cross-complaint, requested a judicial determination of his interest in the Modoc property. The Compromise Settlement and Mutual Release stated that the covenants therein and the $ 390,000 payment was in lieu and instead of any inherited interest *35 in the Modoc property. We therefore reject respondent's contention that the $ 390,000 payment represented a nuisance settlement based on an unrecognized claim to property. We conclude that the underlying claim arose out of a dispute as to the validity of the gratuitous transfer of the Modoc property to petitioner. Accordingly, we conclude that the settlement proceeds represented a payment for any interest that petitioner may have acquired from the purported gratuitous transfer by his father pursuant to the 1978 Deed. Therefore, we hold that the settlement payment was properly excludable from petitioners' 1983 gross income under section 102(a). Because we have concluded that the settlement payment was properly excludable from petitioners' gross income, we need not consider petitioners' alternative argument that any amount realized from the settlement payment was from the sale of a capital asset in which the amount realized did not exceed the basis in the asset. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years in issue. All Rules references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the underpayment of $ 199,746 due to negligence pursuant to section 6653(a)(2). ↩