Franklin P. **COADY**; Nona Coady, Petitioners–Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent–Appellee.

No. 98–71358.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 2000

Filed June 14, 2000

Lance Hulbert, Bothell, Washington, for the petitioners-appellants.

David English Carmack, Karen D. Utiger (signed the brief), and Kenneth W. Rosenberg (argued), United States Department of Justice, Washington, D.C., for the respondent-appellee.

Before: LEAVY, RYMER, and T. G. NELSON, Circuit Judges.

RYMER, Circuit Judge:

The issue before us is whether Franklin and Nona Coady were entitled to exclude from their 1994 gross income $168,217 for costs and contingent legal fees incurred in securing Nona Coady's judgment for lost wages and benefits arising out of her wrongful termination. We conclude that they were not, and affirm.

I

In May 1990, Nona Coady was discharged from her position as Senior Loan Officer at Alaska Housing Finance Corporation (AHFC). Along with her husband, Coady retained the law firm of Hellen, Partnow & Condon (HPC) to represent her in a wrongful termination suit against AHFC for a contingent fee of 33.33% (45% if the judgment were appealed) or $185 per hour plus costs. After a bench trial, the court held that AHFC was liable to Coady for $373,307 ($89,225 for back pay, $76,980 for future lost earnings, and $207,-102 for lost fringe and pension benefits). AHFC issued a check to Coady for $259,-610.89 in full payment of the judgment (withholding $113,696.11 for federal income

taxes, FICA/OASDA, and FICA/MED). The Coadys paid $221,338.32 to HPC ($124,435.67 in attorneys' fees and $96,-902.65 in litigation costs).[1]

On their joint 1994 Federal Income Tax Return, the Coadys excluded $284,082 for the portion of the $373,307 award not paid on account of past wages, instead reporting it as self-employment income on Schedule C of their return. They reported as income from wages only that portion of the award that was paid for back wages ($89,225). The Coadys claimed a deduction of $168,217 for attorneys' fees and litigation costs (the amount of fees and costs proportionate to the portion of the award they reported as self-employment income). This resulted in a net income from self-employment of $115,865. The Coadys claimed a miscellaneous itemized deduction of $53,121 for attorneys' fees and litigation costs proportionate to the $89,225 of the award they reported as income from wages.

The Commissioner sent the Coadys a statutory notice of deficiency, stating that the entire $373,307 should have been included in their 1994 gross income and that the attorneys' fees and litigation costs of $221,338 were deductible as a miscellaneous itemized deduction. The Commissioner asserted a deficiency in tax of $49,531 (plus interest). The Coadys filed suit in tax court. The case was submitted on a fully stipulated record, and the Coadys conceded that the $284,082 reported on Schedule C should not have been reported as self-employment income on Schedule C but should have been reported along with the $89,225 as income from wages. The parties agreed that the $53,121 was deductible as a Schedule A "Miscellaneous Deduction." The parties disagreed as to whether the remaining legal fees and costs of $168,217 ($221,338 less $53,121) consti-

tuted reportable income. The Commissioner contended that the fees and costs were deductible as a Schedule A "Miscellaneous Deduction." The Coadys argued that the fees and costs were not reportable income at all.[2] The tax court upheld the Commissioner's determination. The Coadys appeal.

## II

The Coadys contend that they are entitled to exclude $168,217 from gross income because they "assigned" that portion of their settlement to counsel. They rely on *Cotnam v. C.I.R.*, 263 F.2d 119 (5th Cir. 1959). There, the taxpayer (Ms. Cotnam) won a contract action against the estate of T. Shannon Hunter, who had promised Cotnam one-fifth of his estate in return for her serving him as an attendant. Hunter died without a will, but Cotnam sued and was awarded $120,000, of which $50,365.83 was paid to her attorneys as a contingency fee. After Cotnam paid her taxes, exempting the award as a bequest, the Commissioner determined a deficiency in tax of $36,985.02. The Fifth Circuit Court of Appeals first reasoned that the amount Cotnam received was not exempt as a bequest but was taxable income for services rendered. *See id.* at 121. However, the panel split as to whether the fee paid to Cotnam's attorney should be included in her gross income. Judge Rives and Judge Brown concluded that the $50,365.83 paid to Cotnam's attorneys "should not be included in her gross income. This sum was income to the attorneys but not to Mrs. Cotnam." *Id.* at 125. Under Alabama law, "[a]ttorneys have the same rights as their clients." *Id.* Pursuant to 46 Code of Alabama § 64 (1940):

> Upon suits, judgments, and decrees for money, they shall have a lien superior to

**1.** Litigation expenses totaled $99,951.74. The Coadys had deposited $3,300 as advance payment of legal costs in 1993.

**2.** Pursuant to 26 U.S.C. § 67(b), all itemized deductions not falling within the enumerated list in that subsection are called "miscellane-

ous itemized deductions." Miscellaneous itemized deductions may be deducted from the taxpayer's income "to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income." 26 U.S.C. § 67(a).

all liens but tax liens, and no person shall be at liberty to satisfy said suit, judgment or decree, until the lien or claim of the attorney for his fees is fully satisfied; and attorneys at law shall have the same right and power over said suits, judgments and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them.

*Cotnam* "could never have received the $50,365.83, even if she had settled the case directly with the Bank." *Id.* at 125. The Alabama statute "creates a charge 'in the nature of an equitable assignment \* \* \* (or) equitable lien' in the cause of action. An attorney 'holding such an interest has an equity in the cause of action and the recovery under it *prior* to that of the defendant in the judgment to exercise a right of set-off accruing to him after the attorney's interest had attached.'" *Id.* at 125 (quoting *United States Fidelity & Guaranty Co. v. Levy*, 77 F.2d 972, 975 (5th Cir.1935)) (emphasis added). Accordingly, the court concluded that based on the Alabama statute, the taxpayer was "in a position where she did not realize income as to her attorneys' interests of 40% in her cause of action and judgment." *Id.* Judge Wisdom dissented, reasoning that "at the time of the assignment to the attorneys all of her services had been rendered and all of the income earned." *Id.* at 126 (Wisdom, J. dissenting).

The rule in *Cotnam* has been subject to disagreement among the circuit courts of appeals. The Sixth Circuit recently followed *Cotnam* in *Estate of Clarks v. United States*, 202 F.3d 854 (6th Cir.2000), concluding that the interest portion of an attorney's contingency fee should not be included in the client's gross income. *See id.* at 855–56. The court reasoned that the "common law lien in this case under Michigan law operates in more or less the same way as the Alabama lien in *Cotnam*" because "[a]lthough the underlying claim for personal injury was originally owned by the client, the client lost his right to receive payment for the lawyer's portion of

the judgment." *Id.* at 856. According to the *Clarks* court:

> In the instant case, as in *Cotnam*, the value of the taxpayer's lawsuit was entirely speculative and dependent on the services of counsel. The claim simply amounted to an intangible, contingent expectancy.... Like an interest in a partnership agreement or joint venture, Clarks contracted for services and assigned his lawyer a one-third interest in the venture in order that he might have a chance to recover the remaining two-thirds. Just as in *Cotnam*, the assignment Clarks' lawyer received operated as a lien on a portion of the judgment sought to be recovered transferring ownership of that portion of the judgment to the attorney.

*Id.* at 857.

However, the Federal and First Circuits have declined to follow *Cotnam*. In *Baylin v. United States*, 43 F.3d 1451 (Fed. Cir.1995), the Federal Circuit rejected a taxpayer's claim that because a portion of an award was paid directly to the taxpayer's attorneys, that portion was never part of its gross income: "Very little need be said about this argument, which, if accepted, would elevate form over substance and allow the partnership [the taxpayer] to escape taxation on a portion of its income through a 'skillfully devised' fee arrangement." *Id.* at 1454 (citation omitted). *Baylin* reasoned that

> [A]lthough the partnership did not take actual possession of the funds it paid to its attorney, opting instead to pay him directly out of its eventual recovery, it is evident that the partnership received the benefit of those funds in that the funds served to discharge the obligation of the partnership owing to the attorney as a result of the attorney's efforts to increase the settlement amount. The fee arrangement signifies the value that the parties placed on the attorney's services. In other words, the partnership "made such use or disposition of [its] power to receive ... the income as to

procure in its place other satisfactions which are of economic worth." *Helvering v. Horst,* 311 U.S. 112, 116, 61 S.Ct. 144, 85 L.Ed. 75 (1940).

*Id.* at 1454–55 Additionally, the court stated:

> That the partnership assigned a portion of its condemnation recovery to its attorney before it knew the exact amount of the recovery does not mean that this amount never belonged to the partnership; it means simply that the attorney and client chose to estimate the value of the attorney's services by tying the fee to the ultimate recovery and by having the obligation of the client to the attorney discharged by having the state pay the attorney his fees directly from the recovery. The temporarily uncertain magnitude of the legal fees under such an arrangement and the vehicle of an assignment cannot dictate the income tax treatment of those fees.

*Id.* at 1454; *see also Alexander v. Internal Revenue Service,* 72 F.3d 938, 944–46 (1st Cir.1995) (holding that legal fees expended in procuring a settlement for the loss of salary and retirement benefits should be included in gross income and are deductible as a miscellaneous itemized deduction).

■ We are persuaded by *Baylin, Alexander,* and Judge Wisdom's dissent in *Cotnam.* This case is unlike *Cotnam* and *Clarks* because under Alaska law, attorneys do not have a superior lien or ownership interest in the cause of action as they do in Alabama and Michigan:

> (a) An attorney has a lien for compensation, whether specially agreed upon or implied, as provided in this section
>
> (1) first, upon the papers of the client that have come into the possession of the attorney in the course of the professional employment;
>
> (2) second, upon money in the possession of the attorney belonging to the client;
>
> (3) third, upon money in the possession of the adverse party in an action or proceeding in which the attorney is

employed, from the giving of notice of the lien to that party;

> (4) fourth, upon a judgment to the extent of the costs included in the judgment or, if there is a special agreement, to the extent of the compensation specially agreed on, from the giving of notice of the lien to the party against whom the judgment is given and filing the original with the clerk where the judgment is entered and docketed.
>
> (b) This lien is, however, subordinate to the rights existing between the parties to the action or proceeding.

Alaska Stat. § 34.35.430. According to the statute, an attorney obtains a lien which attaches to property belonging to the client; it does not confer any ownership interest upon attorneys or grant attorneys any right and power over the suits, judgments, or decrees of their clients. *See Hagans, Brown & Gibbs v. First Nat. Bank of Anchorage,* 783 P.2d 1164, 1168 (Alaska 1989).

The Coadys received full payment of the judgment from AHFC. Title 26 U.S.C. § 61(a) defines gross income very broadly as "all income from whatever source derived." "[A]ny funds or other accessions to wealth received by a taxpayer are presumed to be gross income and are includable as such in the taxpayer's return, unless the taxpayer can demonstrate that the funds or accessions fit into one of the specific exclusions created by the Code." *Getty v. C.I.R.,* 913 F.2d 1486, 1490 (9th Cir.1990).

■ To determine whether an award of damages or a settlement payment constitutes gross income, we look to " 'the nature of the underlying action.' " *Id.* (quoting *Tribune Pub. Co. v. United States,* 836 F.2d 1176, 1177 (9th Cir.1988)). We ask: "In lieu of what were the damages awarded?" *Id.* (internal quotations omitted). Here, the award was in lieu of wages and compensation, and is clearly gross income. *See Commissioner v. Schleier,* 515 U.S. 323, 328–30, 115 S.Ct. 2159, 132 L.Ed.2d

294 (1995) (back wages received on account of wrongful termination constitute gross income); *Commissioner v. Smith,* 324 U.S. 177, 181, 65 S.Ct. 591, 89 L.Ed. 830 (1945) (any economic or financial benefit conferred on the employee as compensation constitutes gross income). The entire amount of the award was paid to Nona Coady, and therefore reportable as income. The Coadys simply used a portion of the award subsequently to discharge their personal liability to their attorneys.

The Supreme Court has explicitly rejected the notion that taxation can be escaped by procuring payment directly to creditors or by making anticipatory arrangements to prevent earnings from "vesting even for a second" in the person who earned it. *See Lucas v. Earl,* 281 U.S. 111, 114–15, 50 S.Ct. 241, 74 L.Ed. 731 (1930) ("There is no doubt that the [Revenue Act] could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary when paid from vesting even for a second in the man who earned it."). "[T]he rule that income is not taxable until realized has never been taken to mean that the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he has not himself received payment of it from his obligor." *Helvering v. Horst,* 311 U.S. 112, 116, 61 S.Ct. 144, 85 L.Ed. 75 (1940). Even if the taxpayer "procures payment directly to his creditors of the items of interest or earnings, ... he does not escape taxation because he did not actually receive the money." *Id.* (citations omitted); *see also Helvering v. Eubank,* 311 U.S. 122, 124–25, 61 S.Ct. 149, 85 L.Ed. 81 (1940); *United States v. Basye,* 410 U.S. 441, 449, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973) ("[I]ncome must be taxed to him who earns it.... The entity earning the income ... cannot avoid taxation by entering into a contractual arrangement whereby that income is diverted to some other person or entity.") (citations omitted);

*Chugach Alaska Corp. v. United States,* 34 F.3d 1462, 1467 (9th Cir.1994) (same).

The Coadys argue that these cases are distinguishable because here there was the existence of real doubt at the time of the assignment of the contingency fee. However, we have previously held that the fact that such an assignment involves a contingent amount does not alter the conclusion that taxation cannot be escaped by making anticipatory arrangements to prevent earnings from vesting in the person who earned it. *See Kochansky v. C.I.R.,* 92 F.3d 957, 959 (9th Cir.1996) (portion of a contingency fee that a lawyer assigned to his ex-wife was taxable to the lawyer, not to his wife despite the fact that the fee was "uncertain, doubtful, and contingent" at the time the lawyer assigned it). So has the Federal Circuit. *See Baylin,* 43 F.3d at 1454–55. Therefore, we conclude that Coady's recovery for back pay and benefits was income to her on which she cannot avoid taxation by diversion to creditors, including counsel for a contingency fee.

### III

In the alternative, the Coadys contend that their arrangement with HPC establishes a joint venture or partnership for federal tax purposes under § 7701(a)(2). However, we decline to consider this argument because the Coadys failed to raise it in the Tax Court. *See Broad v. Sealaska Corp.,* 85 F.3d 422, 430 (9th Cir.1996).

AFFIRMED.