**Ivor F. BENCI–WOODWARD and Debra A. Benci–Woodward, Petitioners–Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**Laurentz J. Mangum and Barbara Mangum, Petitioners–Appellants,**

**v.**

**Commissioner of Internal Revenue, Respondent–Appellee.**

**Jose Ragatz and Dianne M. Ragatz, Petitioners–Appellants,**

**v.**

**Commissioner of Internal Revenue, Respondent–Appellee.**

**Nos. 99–70136, 99–70138, 99–70137.**

United States Court of Appeals, Ninth Circuit.

Submitted June 8, 2000[1]

Filed July 18, 2000

---

1. The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Philip Garrett Panitz and Ryan D. Schapp, Law Offices of Philip Garrett Panitz, Westlake Village, California, for the petitioners.

Teresa E. McLaughlin and Tamara W. Ashford, Tax Division, Department of Justice, for the respondent.

Before: TROTT, FERNANDEZ, and McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge:

The question before us is whether the taxpayers may exclude from gross income the portion of a punitive damages award retained by their attorney pursuant to a contingent fee agreement. The answer is no and is dictated by our recent case of *Coady v. Commissioner,* 213 F.3d 1187 (9th Cir.2000). Although *Coady* involved analysis of an attorney lien under Alaska law, the result is the same under California law. We have jurisdiction pursuant to 26 U.S.C. § 7482(a)(1), and we affirm the decision of the Tax Court.

## BACKGROUND

Petitioners, who were employees of Target Stores, filed a lawsuit in California state court against Dayton–Hudson, Inc. (of which Target is a division) and Dana Pereau. The complaint, stemming from events arising out of an employer investigation, alleged false imprisonment, defamation, intentional infliction of emotional distress, wrongful discharge in violation of public policy, breach of an implied-in-fact employment contract, breach of the implied covenant of good faith and fair dealing, constructive discharge, and intentional misrepresentations. In connection with their legal representation, Petitioners entered into a Retainer Agreement with their attorney that provided for a contin-

gent fee arrangement and that gave him a lien on any recovery in the case.

Following trial, a jury returned a verdict in favor of Petitioners. The award included both compensatory and punitive damages. Petitioners did not initially report their punitive damages award as taxable income, but have since conceded that the portion of those damages retained by them is includable in gross income. They argued, however, that the portion of the punitive damages retained by their attorney as fees and costs should be excluded from gross income. The Tax Court disagreed, ruling that all of the punitive damages were fully includable in Petitioners' gross income without an offset for attorney fees and costs. The Tax Court further ruled that, as miscellaneous itemized deductions, the contingent fees are subject to disallowance as a result of the application of the Alternative Minimum Tax ("AMT").

## DISCUSSION

 We review de novo the Tax Court's conclusions of law. *Ferguson v. Commissioner*, 174 F.3d 997, 1001 (9th Cir.1999). Under California law, an attorney lien does not confer any ownership interest upon attorneys or grant attorneys any right and power over the suits, judgments, or decrees of their clients. The California Supreme Court explained that

in whatever terms one characterizes an attorney's lien under a contingent fee contract, it is no more than a security interest in the proceeds of the litigation.... While there is occasional language in cases in the effect that the attorney also becomes the equitable owner of a share of the client's cause of action, we stated more accurately in *Fifield Manor v. Finston* (1960) 54 Cal.2d 632, 641, 7 Cal.Rptr. 377, 383, 354 P.2d 1073, 1079, 78 A.L.R.2d 813, that contingent fee contracts "do not operate to transfer a part of the cause of action to

the attorney but only give him a lien upon his client's recovery."

\* \* \*

[T]he conclusion emerges that in litigation an attorney conducts for a client he acquires no more than a professional interest. To hold that a contingent fee contract or any "assignment" or "lien" created thereby gives the attorney the beneficial rights of a real party in interest, with the concomitant personal responsibility of financing the litigation, would be to demean his profession and distort the purpose of the various acceptable methods of securing his fee.

*Isrin v. Superior Court,* 63 Cal.2d 153, 158, 161, 45 Cal.Rptr. 320, 403 P.2d 728, 732, 733 (1965); *see also id.* at 161, 45 Cal.Rptr. at 326, 403 P.2d at 734 ("The fact that [the attorney] has a right by contract to participate in the proceeds of any judgment does not make him in any true sense of the word a party in interest."); *Cooper v. Equity Gen. Ins.,* 219 Cal.App.3d 1252, 1260, 268 Cal.Rptr. 692 (1990) ("A contingent fee contract does not transfer to the attorney any rights to the client's cause of action, but rather gives the attorney a lien on the client's prospective recovery."). *Cf. Estate of Clarks v. United States,* 202 F.3d 854, 857–58 (6th Cir.2000) (stating that under Michigan law, attorney becomes a "tenant in common" of the litigation).

 In light of California law, our holding here-that the attorney fee portion of the punitive damages recovery is taxable to Petitioners-is compelled by our analysis in *Coady. See* 213 F.3d at 1190 (holding that Alaska law "does not confer any ownership interest upon attorneys or grant attorneys any right and power over the suits, judgments, or decrees of their clients," concluding that contingent fees and costs were not excludable from gross income, and distinguishing *Estate of Clarks* and *Cotnam v. Commissioner,* 263 F.2d 119 (5th Cir.1959)).[2]

**2.** Petitioners' effort to distinguish contingent fees from other anticipatory assignments of

income due to the uncertainty of their realization is foreclosed by *Coady. See* 213 F.3d at

 We also reject Petitioners' contention that the portion of the recovery paid to their attorney is not subject to disallowance as a result of the application of the AMT. The starting point is the interpretation of 26 U.S.C. § 67, which imposes a 2–percent floor on miscellaneous itemized deductions of individuals. 26 U.S.C. § 67(a). Miscellaneous itemized deductions are defined as those itemized deductions that are not specifically enumerated within section 67(b). Legal expenses are not so enumerated and thus are classified as miscellaneous itemized deductions. This result follows from the plain language of the statute and Petitioners cite no authority to the contrary. The next question is whether miscellaneous itemized deductions are allowed for purposes of computing the AMT. Section 56(b) is crystal clear that "[n]o deduction shall be allowed ... for any miscellaneous itemized deduction." 26 U.S.C. § 56(b)(1)(A). The Tax Court correctly determined that the legal expenses at issue here are miscellaneous itemized deductions, see 26 U.S.C. § 67(b), and as such are not allowed as deductions for purposes of computing AMT liability, see 26 U.S.C. § 56(b)(1)(A)(i).

 Petitioners also argue that the AMT results in inequities to certain taxpayers; such considerations, however, are more appropriately left for congressional resolution. See Alexander v. IRS, 72 F.3d 938, 946–47 (1st Cir.1995) (recognizing that, although application of AMT to legal fees may result in a seemingly unfair outcome, "there is [no] inequality of treatment as compared to similarly situated taxpayers ... [and i]t is well established that equitable arguments cannot overcome the plain meaning of the statute"); Weiser v. United States, 959 F.2d 146, 148–49 (9th Cir.1992) (rejecting taxpayer challenge to disallowance of deductions under AMT on inequity grounds); see generally Okin v.

Commissioner, 808 F.2d 1338, 1342 (9th Cir.1987) (upholding constitutionality of AMT).

AFFIRMED.

1191 ("[T]he fact that such an assignment involves a contingent amount does not alter the conclusion that taxation cannot be escaped by making anticipatory arrangements to prevent earnings from vesting in the person who earned it.").