T.C. Summary Opinion 2001-190

UNITED STATES TAX COURT

ROBERT HENRY LEHMUTH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12325-00S.                    Filed December 28, 2001.

Robert Henry Lehmuth, pro se.

<u>James J. Posedel</u>, for respondent.

WOLFE, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in Orange, California, at the time the petition was filed.

Respondent determined a deficiency of $4,056 in petitioner's 1998 Federal income tax. After a concession,[1] the issues for decision are: (1) Whether the amounts petitioner actually or constructively received in settlement of a suit for unpaid overtime wages constitute gross income to petitioner, and (2) if so, whether petitioner constructively received a portion of the settlement proceeds that his attorney did not remit to him.

Background

Prior to the year in issue, petitioner was employed as a laboratory manager (lab manager) by Kits Camera, Inc. (Kits).[2] In June 1997, petitioner, along with five other individuals, filed a class action lawsuit in the Superior Court for the State of California for the County of Orange against Kits for damages for failure to pay overtime compensation and for failure to pay

---

[1]Petitioner concedes that he is liable for the 10-percent additional tax under sec. 72(t) of $41 for an early distribution of $414 from a retirement account.

[2]At some point during or prior to 1998, Kits Camera, Inc., changed its name to Kits Sunset, Inc.

earned wages. Petitioner was represented by James S. Davis (Mr. Davis). The class potentially involved at least 17 individuals who had been employed as lab managers by Kits. Before the class action lawsuit was certified, Kits settled with two of the lab managers, petitioner and Ernesto Sanchez (Mr. Sanchez), both of whom were represented by Mr. Davis.

At the time of the settlement, Mr. Davis also represented former store managers employed by Kits in a similar but separate lawsuit pending against Kits (the store manager case). The settlement agreement did not preclude Mr. Davis from continuing his representation of the store managers. The settlement agreement did require petitioner and Mr. Sanchez to release all of their claims against Kits. In a paragraph captioned "RELEASE OF ALL CLAIMS AND LIABILITIES", the settlement agreement provides in part:

> the Plaintiffs * * * hereby irrevocably and
> unconditionally release, acquit and forever discharge
> Defendants * * * from any and all charges, complaints,
> claims, liabilities, obligations, promises, agreements,
> controversies, damages, actions, causes of action,
> suits, rights, demands, costs, losses, debts and
> expenses * * * of any nature whatsoever * * *.

In a paragraph captioned "CASH PAYMENT", the settlement agreement provides in part:

> Upon performance of all other terms of the settlement,
> payment will be made to Plaintiffs by way of check,
> payable to the "James S. Davis Client Trust Account" in
> the amount of Forty-five Thousand Dollars ($45,000); of
> this amount Plaintiff Robert Lehmuths [sic] is to
> receive $15,000, Plaintiff Ernesto Sanchez is to

receive $15,000 and their attorney will receive $15,000 in attorneys' fees and costs.

Mr. Davis signed the settlement agreement on behalf of petitioner and Mr. Sanchez on August 5, 1998. On the same day, Mr. Davis drafted a letter to petitioner and Mr. Sanchez, stating in part:

> With great pleasure I enclose for each of you a check in the sum of $12,500.00 which is the partial payment you are do [sic] from the Lab Managers Case. You each have an additional $2,500.00 coming from costs to be recovered. You also are participants in the Store Manager Case.
>
>     *       *       *       *       *       *       *
>
> As to the Store Manager Case, I don't know how long it will take to settle, but I'll be pushing it as much as possible. We can still add Store Managers and you can talk to them about their case, just not yours.

Petitioner received the $12,500 check from Mr. Davis and promptly deposited it in 1998.

After receiving and depositing the check for $12,500, petitioner asked Mr. Davis to send him the remaining $2,500. Mr. Davis denied the request and informed petitioner that he had withheld $2,500 from both petitioner and Mr. Sanchez to help cover the costs of the store manager case in which they were participating, and that they would receive their $2,500 when the store manager case was resolved. Contrary to Mr. Davis's comments, petitioner was barred from participating in the store manager case by the unequivocal terms of the settlement agreement.

Mr. Davis and petitioner never entered into a written agreement permitting Mr. Davis to retain the $2,500 at issue. Petitioner made several requests to Mr. Davis for his $2,500 between the date of the settlement agreement and the date of trial, but Mr. Davis never sent the money to petitioner.

Petitioner failed to report any of the settlement proceeds on his 1998 Federal income tax return.  On September 6, 2000, respondent mailed to petitioner a notice of deficiency in which respondent determined a deficiency of $4,056 in petitioner's Federal income tax for 1998.  Respondent determined that petitioner failed to include as income the entire $15,000 of the settlement proceeds.

Respondent contends that the settlement proceeds are taxable to petitioner.  Respondent's position is that the full amount of the $15,000 proceeds to which petitioner is entitled is includable in petitioner's gross income for 1998 because petitioner actually received $12,500 and constructively received $2,500 during that year.[3]

---

[3]We note that respondent might have raised an argument that petitioner should include in income his pro rata share (1/2) of the attorney's fees paid to Mr. Davis.  See Benci-Woodward v. Commissioner, 219 F.3d 941 (9th Cir. 2000), affg. T.C. Memo. 1998-395; Kenseth v. Commissioner, 114 T.C. 399, affd. 259 F.3d 881 (7th Cir. 2001).  However, respondent did not raise this issue, and we do not consider it.  This Court repeatedly has held that we do not consider issues that have not been pleaded.  See Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. per curiam 920 F.2d 1196 (5th Cir. 1990); Markwardt v. Commissioner, 64 T.C. 989, 997-998 (1975) (and cases cited therein).

Discussion

Section 61 provides that all income, from whatever source derived, is includable in gross income unless specifically excluded by another provision. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). Compensation for services is specifically included in the definition of gross income. Sec. 61(a)(1); see also Commissioner v. Smith, 324 U.S. 177, 181 (1945) ("any economic or financial benefit conferred on the employee as compensation" is includable in taxable income, whatever the form or mode by which it is effected). With respect to damages, "'whether a claim is resolved through litigation or settlement, the nature of the underlying action determines the tax consequences of the resolution of the claim.'" Milenbach v. Commissioner, 106 T.C. 184, 198 (1996) (quoting Tribune Publg. Co. v. United States, 836 F.2d 1176, 1177 (9th Cir. 1988)). In characterizing the settlement payment for tax purposes, we ask: "'In lieu of what were the damages awarded?'" Id. (quoting Raytheon Prod. Corp. v. Commissioner, 144 F.2d 110, 113 (1st Cir. 1944), affg. 1 T.C. 952 (1943)).

The settlement here in question resolved petitioner's lawsuit against Kits for its failure to pay petitioner overtime compensation or wages. The proceeds of the settlement were paid

in lieu of compensation for services and therefore constitute gross income to petitioner.

Petitioner states in the petition: "I was NEVER a 1099 employee (independent contractor); wages earned were earned as a W2 employee. * * * These wages--as an employee--should have had all taxes withheld." Petitioner also argues that because he allegedly did not receive a Form W-2 or a Form 1099 with respect to the settlement proceeds, the proceeds are exempt from Federal income tax.

Petitioner's initial argument, presented in general form in the petition, was that his former employer should have paid him overtime compensation timely and should have withheld Federal income tax from the timely payment. Petitioner argued that, consequently, his former employer is responsible for any Federal income tax now due on the settlement payment in lieu of overtime compensation. Since petitioner did not pursue this argument at trial, we conclude that petitioner has abandoned it. See Zimmerman v. Commissioner, 67 T.C. 94, 104 n.7 (1976). In any event, we reject the argument as without merit. As for petitioner's alleged nonreceipt of a Form W-2 or a Form 1099, the law is well settled that the nonreceipt of either form does not excuse a taxpayer from the duty to report income, Deas v. Commissioner, T.C. Memo. 2000-204 (and cases cited therein), and that failure to receive either form does not justify a taxpayer

in excluding from gross income the amounts that should have been reported on the form; see, e.g., <u>Neely v. Commissioner</u>, 85 T.C. 934, 952 (1985); <u>Fairchild v. Commissioner</u>, T.C. Memo. 2001-237; <u>Rivera v. Commissioner</u>, T.C. Memo. 1994-625; <u>Vaughn v. Commissioner</u>, T.C. Memo. 1992-317, affd. without published opinion 15 F.3d 1095 (9th Cir. 1993). Petitioner has failed to show that the settlement proceeds fall within the purview of any provision of the Code or of law excluding them from gross income. Therefore, the $12,500 that he actually received from Mr. Davis is includable in his gross income.

We now address the $2,500 settlement payment to which petitioner was entitled, but which he never actually received.

A taxpayer who reports income under the cash method of accounting must report income for the taxable year when actually or constructively received. Sec. 1.451-1(a), Income Tax Regs.

> Income * * * is constructively received by * * * [a taxpayer] in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

Sec. 1.451-2(a), Income Tax Regs. Under the constructive-receipt doctrine, a taxpayer recognizes income when the taxpayer has an unqualified, vested right to receive immediate payment. <u>Martin v. Commissioner</u>, 96 T.C. 814, 823 (1991). "Generally,

there must be an amount that is immediately due and owing that the obligor is ready, willing, and able to pay." Childs v. Commissioner, 103 T.C. 634, 654 (1994), affd. without published opinion 89 F.3d 856 (11th Cir. 1996). The amount owed must either be credited to the taxpayer or set aside for the taxpayer so that the taxpayer has an unrestricted right to receive it immediately, and the taxpayer being aware of these facts, declines to accept the payment. Id. The constructive-receipt doctrine precludes the taxpayer from deliberately turning his back upon income otherwise available. Martin v. Commissioner, supra.

The determination whether a taxpayer has constructively received income is essentially a question of fact. Childs v. Commissioner, supra at 654. We have long held that the doctrine of constructive receipt is to be applied sparingly. The doctrine is only to be invoked when the taxpayer has an unrestricted right to receive payment of money that is available to him. Furstenberg v. Commissioner, 83 T.C. 755, 792-793 (1984); Basila v. Commissioner, 36 T.C. 111, 115-116 (1961) (citing Gullett v. Commissioner, 31 B.T.A. 1067, 1069 (1935)).

Generally, receipt of payment by an agent is constructive receipt by the principal. Md. Cas. Co. v. United States, 251 U.S. 342, 346-347 (1920); Burkes v. Commissioner, T.C. Memo. 1998-61. An exception to the general rule exists if there is an

unauthorized use of funds from which the principal derives no benefit.  Alsop v. Commissioner, 290 F.2d 726, 728 (2d Cir. 1961), affg. 34 T.C. 606 (1960); Grant v. Commissioner, T.C. Memo. 1995-29, affd. on another issue 103 F.3d 948 (11th Cir. 1996).  However, if the principal derives an economic benefit from the agent's actions, the principal constructively receives the income even though the agent took unauthorized action to the detriment of the principal.  Sowell v. Commissioner, 302 F.2d 177, 179-180 (5th Cir. 1962), revg. T.C. Memo. 1961-115; Wells v. Commissioner, T.C. Memo. 1967-154.

Mr. Davis, as petitioner's attorney, was acting as petitioner's agent when he properly received the settlement proceeds from Kits.  See Estate of Kamm v. Commissioner, 349 F.2d 953, 956 (3d Cir. 1965), affg. T.C. Memo. 1963-344.  Therefore, in the absence of an exception to the general rule, the money received by Mr. Davis was constructively received by petitioner.

Petitioner asserts that he did not authorize Mr. Davis to retain any portion of the $15,000 to which petitioner was entitled pursuant to the settlement agreement.  He also states that he never expressed to Mr. Davis an interest in either participating or investing in the store manager case.  After receiving the $12,500 check, petitioner asked Mr. Davis on several occasions to send him the remaining $2,500, but he never received these funds.  Mr. Davis responded to petitioner's

requests by telling petitioner that his money was being used to cover the costs in the store manager case. Petitioner's requests for the $2,500 balance of the settlement due to him all were oral. He never wrote to Mr. Davis to request payment of these funds.

Mr. Davis asserts that petitioner agreed that he should retain $2,500 of the amount due to petitioner from settlement of the lab manager case to help fund the litigation of the store manager case. Mr. Davis explained that he was "ready, willing and able" to send petitioner his $2,500 if petitioner sent him a letter requesting the money and a release of any claim for compensation for assisting with the store manager case. Mr. Davis acknowledges that he and petitioner never entered into a written agreement allowing Mr. Davis to retain the $2,500 due to petitioner.

The record here shows that petitioner was entitled to a settlement payment of $15,000 and that the entire amount was paid to petitioner's attorney, Mr. Davis. The attorney paid $12,500 to petitioner and retained $2,500. He explained to petitioner that petitioner had "an additional $2,500 coming from costs to be recovered" and that petitioner was a participant in the store manager case. At the time of this explanation, the entire $15,000 amount already had been paid to the attorney. The settlement agreement included a general release of all

petitioner's claims against Kits. He was not permitted to participate in the store manager case.

Mr. Davis explained many of the circumstances of his dealings with petitioner and of his litigation against Kits in an effort to show that he retained the funds in question with petitioner's consent and for his benefit. We are not convinced by these arguments. Mr. Davis was an experienced attorney at the time in question. If the facts were as he represented, he could have sent the entire $15,000 to petitioner and requested the return of $2,500 for whatever legitimate purpose he had in mind. Alternatively, he could have obtained petitioner's written agreement to his retaining $2,500. He did neither. Instead, he paid only $12,500 to petitioner and offered a questionable explanation for retaining the balance.

We conclude that petitioner did not constructively receive the $2,500 that Mr. Davis retained and never sent to petitioner. Petitioner did not authorize Mr. Davis to retain the $2,500. Petitioner's attempts to obtain the money were unsuccessful. The money simply was not available to him. Moreover, petitioner received no economic benefit from Mr. Davis's unilateral decision to retain the money. There was no possibility that petitioner could benefit from participating in the store manager case because the settlement agreement with respect to the lab manager case and the general release included in that settlement barred

petitioner from participating in the store manager case. Consequently, authorities such as <u>Sowell v. Commissioner</u>, <u>supra</u>, and <u>Wells v. Commissioner</u>, <u>supra</u>, finding constructive receipt where the principal enjoyed an economic benefit notwithstanding the absence of authorization by the principal, are not applicable.

Petitioner received $12,500 in settlement of his claim against Kits in 1998, but the additional $2,500 paid to his attorney for him was not available to him and was not constructively received by him.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.