Earle F. TUCKER and Martha Tucker,
Petitioners,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

Earle F. TUCKER, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

Nos. 15328, 15329.

United States Court of Appeals
Eighth Circuit.

Oct. 18, 1955.

Joseph A. Maun, St. Paul, Minn. (William R. Busch, Jerome B. Simon, and Bundlie, Kelley & Maun, St. Paul, Minn., on the brief), for petitioners.

David O. Walter, Atty., Dept. of Justice (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Atty., Dept. of Justice, on the brief), for respondent.

Before SANBORN, COLLET and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

These are petitions to review decisions of the Tax Court redetermining deficiencies in the income taxes of the petitioners for the years 1947, 1948 and 1949. The Commissioner of Internal Revenue determined that payments made by the Universal Motor Company, of Bismarck, North Dakota, of 20% of its net profits during those years to a former stockholder, pursuant to a contract with him, were taxable to the petitioners as constructive dividends, and assessed deficiencies accordingly. The Tax Court sustained the Commissioner. 23 T.C. 115. Since both cases arose out of the same factual situation, they were consolidated for trial in the Tax Court and for review here. The evidentiary facts are virtually undisputed. The petitioners assert that the conclusion reached by the Tax Court that the payments in question were taxable to them as income is without adequate evidentiary support.

The Universal Motor Company was a North Dakota corporation. The original incorporators were John R. Fleck, his brother J. A. Fleck (also known as Jack Fleck), and Gordon V. Cox, a Bismarck attorney. The company had a terminable sales agency contract or franchise from the Ford Motor Company and was engaged at Bismarck, North Dakota, in selling Ford, Lincoln and Mercury automobiles and Ford parts.

From 1935 to 1939, John R. Fleck was the active manager of the Universal Motor Company and in control of a majority of its capital stock. In 1935, Earle F. Tucker was employed by Fleck as sales manager of the Universal Motor Company. John R. Fleck then owned a stock interest in the Fleck Motor Sales Company, a General Motors agency in Bismarck which was being managed by his brother. The brother had stock in the Universal Motor Company. In 1939, John R. Fleck bought out the stock interests of his brother in both the Universal Motor Company and the Fleck Motor Sales Company. John R. Fleck then left the Universal Motor Company and took over the active management of the Fleck Motor Sales Company. He made Tucker general manager of the Universal Motor Company.

That created a situation which was opposed to the policy of the Ford Motor Company with respect to its agencies. That policy was that the manager of a Ford agency should have the controlling stock interest in the corporation holding the franchise. C. H. Arnold, a representative of the Ford Motor Company, charged with the supervision of its agency in Bismarck, early in the year 1945 discussed with Tucker and John R. Fleck this conflict in policy resulting from the fact that Tucker, the manager of Universal Motor Company, was a minority stockholder. Arnold stated that, in order for that company to continue to hold its franchise, it was necessary that the manager have 51% of its outstanding stock. He suggested that Fleck either leave the Fleck Motor Sales Company and return to the active management of the Univer-

sal Motor Company or that he sell Tucker enough stock to give him control of Universal. The Universal Motor Company was advised that if its affairs were not arranged so that its manager owned the controlling stock interest, termination of its Ford franchise would be considered. Fleck was unwilling to return to the active management of the Universal Motor Company and to part with his stock interest in it.

There were 400 shares of the capital stock of Universal Motor Company outstanding. Of these, 151 shares were in the name of Blanche E. Fleck, wife of John R. Fleck. He owned 57 shares, Gordon V. Cox had 80 shares, and Earle F. Tucker had 112 shares. It was necessary for Tucker to acquire 92 additional shares of stock if he was to have the 51% stock ownership.

Fleck advised Cox that it was very important to keep the Universal Motor Company together and that if Cox would sell his 20% stock interest to Tucker, the Company would pay Cox 20% of its earnings during the next five years, and, in addition, $2,000 for each of those years as attorney's fees.

Following negotiations between Cox, Fleck and Tucker in March, 1945, a contract was entered into between Cox and Tucker, whereby Cox agreed to sell his 80 shares of stock to Tucker at $225 per share, or $18,000, payment to be made on May 1, 1945. The stock had a book value of $147.84 a share. Tucker paid the $18,-000 on April 30, 1945.

On April 30, 1945, the Universal Motor Company entered into an agreement with Cox, under which it obligated itself to pay him 20% of its net earnings for the years ending May 1, 1946, May 1, 1947, May 1, 1948, May 1, 1949, and May 1, 1950. The first paragraph of the agreement reads as follows:

"In consideration of said Gordon V. Cox selling to Earle F. Tucker eighty (80) shares of stock in said Universal Motor Company and, whereas, such sale is necessary in order for the Universal Motor Company to continue to operate as a

Ford Agency in the City of Bismarck, it is hereby agreed between the parties hereto:"

On May 1, 1945, Tucker purchased 12 shares of Universal Motor Company stock from John R. Fleck's wife for a price of $6,000, and then for the first time became the owner of 51% of the capital stock of the company.

Under the contract between the Universal Motor Company and Cox, it paid him the following amounts, representing 20% of its net earnings during the years in suit:

| | |
|---|---|
| 1947, | $14,761.88 |
| 1948, | $12,386.54 |
| 1949, | $11,146.74 |

These amounts the company charged to surplus, and no deductions for such payments were claimed in its tax returns. It is the payments above referred to, made by the company to Cox, which the Commissioner and the Tax Court have held were dividends constructively received by Tucker and therefore taxable to him.

▮ It is unquestionably true that the several transactions resulting in Tucker's becoming a majority stockholder of the Universal Motor Company were interrelated and were carried out for the purpose of preserving to the company its Ford agency franchise. The agreement between the company and Cox represented what Fleck, while a controlling stockholder of the company, told Cox would be done if Cox would sell his stock to Tucker, thereby enabling Fleck to continue as active manager of the Fleck Motor Sales Company and at the same time to retain a 49% stock interest in the Universal Motor Company. The deal that was made with Cox resulted in the company's retaining its franchise—perhaps its most valuable asset—and was of benefit to it as well as to John R. Fleck and his wife and to Tucker. The contract between the company and Cox was supported by a valuable consideration, and was for a proper corporate purpose, namely, to preserve a valuable corporate asset and to enable the company to continue as a going concern. We think that to treat the payments made by the company to Cox, during the years in suit, as income constructively received by Tucker was carrying the doctrine of constructive dividends too far.

▮ This is not a case where one in control of a corporation has, under the pretense of corporate action, siphoned off its profits for purely personal purposes. See Byers v. Commissioner of Internal Revenue, 8 Cir., 199 F.2d 273, and Dickey v. Burnet, 8 Cir., 56 F.2d 917. It is not, in our opinion, a case where Tucker had "unfettered command" over the profits ultimately paid by the Universal Motor Company to Cox under his contract. Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. Neither can the contract between the company and Cox properly be said to be one of those anticipatory arrangements whereby "the fruits are attributed to a different tree from that on which they grew." Lucas v. Earl, 281 U.S. 111, 114–115, 50 S.Ct. 241, 74 L.Ed. 731.

We find no adequate basis in the evidence for the ruling of the Tax Court that Cox's income from his contract with the Universal Motor Company during the years in suit was legally taxable to Tucker, who did not receive it, could not have received it, and was certainly not benefited by the payments made by the company to Cox to any greater extent than were John R. Fleck and his wife and the company itself.

Cases having some analogy in principle to the instant problem are: Nelson v. Commissioner of Internal Revenue, 6 Cir., 203 F.2d 1; Ruben v. Commissioner of Internal Revenue, 8 Cir., 97 F.2d 926.

The decision of the Tax Court is reversed.