**James T. SINYARD; Monique T. Sinyard, Petitioners– Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

No. 99–71369.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 2001

Filed Sept. 25, 2001

Thomas H. Boyd, Winthrop & Weinstine, P.A., St. Paul, Minnesota, for the petitioners.

Paula M. Junghans, Richard Farber, and Kenneth W. Rosenberg, United States Department of Justice, Tax Division, Washington, D.C., for the respondent.

Before: NOONAN, McKEOWN, and WARDLAW, Circuit Judges.

Opinion by Judge NOONAN; Dissent by Judge McKEOWN

NOONAN, Circuit Judge:

James T. Sinyard and his wife Monique T. Sinyard (the Sinyards) appeal the judgment of the Tax Court determining a deficiency in their income tax for the taxable year 1992. At issue is the taxpayer's liability for attorneys' fees paid pursuant to court order approving the settlement of two class actions brought under the Age Discrimination in Employment Act (the ADEA), 29 U.S.C. § 621 et seq. Holding that such fees paid on the taxpayer's behalf are income to the taxpayer, we affirm the judgment of the Tax Court.

## FACTS

In the 1980's James Sinyard was the division manager in Mobile, Alabama of IDS Financial Services, Inc. (IDS). In 1987, at the age of 49, he was allegedly forced to resign. In March 1989, Sinyard joined two class action suits against IDS alleging age discrimination and other torts. Sinyard entered into an agreement with class action counsel, Winthrop & Weinstine, providing: "In the event of a recovery, Winthrop & Weinstine will be paid one third (⅓) of the amount you obtain in the lawsuit, whether by settlement or jury award."

In April 1990, the Equal Employment Opportunity Commission (the EEOC) intervened. In 1992, the suits were settled. IDS agreed to pay $35 million "in full and complete settlement of all claims as described in this Agreement and the exhibits hereto"; the payment was to be made "to the 32 individual plaintiffs, Mervyn Taylor, and Winthrop & Weinstine, P.A., their attorneys." After deducting costs and disbursements of $1.7 million the 32 individual plaintiffs agreed to allocate one-third of the remaining total settlement amount as compensation for tort injuries to the plaintiffs, to allocate one-third of the settlement amount as compensation for lost wages, and to "allocate one-third of the settlement amount for payment of attorneys' fees pursuant to 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b)." IDS agreed to pay the attorneys' fees plus amounts allocated to legal costs and disbursements "directly to Winthrop & Weinstine, P.A., or to an account designated by them." IDS agreed to withhold federal and state income taxes on the one-third of the settlement which was allocated as compensation for lost wages.

IDS also agreed to undertake various measures to ensure its compliance with the ADEA, such as training sessions for all managers and supervisors, and to make regular reports to the EEOC as to any division manager who resigned, retired, had been demoted or had been terminated. IDS agreed to instruct all IDS personnel about the importance of avoiding age discrimination and, in particular, to avoid the use of such code words as "new blood" or "young turks" on the one hand, or "over the hill" or "behind the times," on the other. The settlement agreement was contingent upon approval by the court.

On August 26, 1992, the federal district court in which the suits were pending approved the settlement and issued the order drafted by the parties allocating one-third

of the settlement to "attorneys' fees recoverable pursuant to 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b)," to be paid directly without withholding for taxes, to Winthrop & Weinstine.

In accordance with the settlement, the proceeds were allocated as follows:

| | |
|---|---|
| Total settlement payment | $35,000,000 |
| Less costs and disbursements | $ 1,500,000 |
| Net settlement proceeds | $33,500,000 |

Allocation of net settlement proceeds:

| | |
|---|---|
| Attorneys' fees (⅓) | $11,166,666.65 |
| Tort damages | $12,616,666.70 |
| Lost wages | $11,166,666.65 |

IDS issued a single check to Winthrop & Weinstine for $23,783,333.35, the sum of the tort damages and the attorneys' fees. The check was deposited in a trust account on behalf of the class action plaintiffs.

## PROCEEDINGS

The Commissioner of Internal Revenue assessed a deficiency in the Sinyards' 1992 tax return. They petitioned the Tax Court to deny the deficiency. The case was tried on stipulated facts. October 7, 1998 the Tax Court sustained the Commissioner, holding that payment of a portion of the legal fees to Winthrop & Weinstine had satisfied an obligation of James Sinyard.

The amount received in settlement by him that is not now in dispute was as follows:

| | |
|---|---|
| $ 273,573 | taxable back wages |
| 164,144 | taxable tort damages |
| 109,429 | nontaxable personal injury damages |
| $ 547,146 | |

In addition, legal fees and costs of $63,152 were allocated to the nontaxed personal injury damages and by agreement with the Commissioner excluded from income.

The Commissioner maintains that $252,608 in attorneys' fees should be treated as income to the Sinyards. The Commissioner held this amount allowable as a miscellaneous itemized deduction. This deduction was reduced by 2% of Adjusted Gross Income, leaving a deduction of $240,984 for the attorneys' fees. The full amount of this deduction could not be taken because the Sinyards' income was subject to the Alternative Minimum Tax (the AMT). The result was the deficiency upheld by the Tax Court.

The Sinyards appeal.

## ANALYSIS

■ If A owes B a debt, and C pays the debt on A's behalf, it is elementary that C's payment is income to A as well as to B. Here, James Sinyard had contracted to pay Winthrop & Weinstine one-third of what he might receive in settlement. His obligation to the law firm was satisfied by IDS. The payment was therefore income to him. "The discharge by a third person of an obligation to him is equivalent to receipt by the person taxed." *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 729, 49 S.Ct. 499, 73 L.Ed. 918 (1929).

The Sinyards maintain their case is different. It is one where A owes B but C is liable to B for the same debt and indeed is primarily liable. When C satisfies his obligation to B, C's payment arguably should not be treated as income to A. In the present case, IDS became liable to pay the attorneys' fees. It did so by virtue of the order of the court confirming the settlement and ordering IDS to perform according to its terms. IDS became primarily liable for the debt to Winthrop & Weinstine. When IDS discharged the debt it was bound to pay, the Sinyards say they received no income.

The Sinyards have scoured the reports to find cases supporting their contention. What they have found, for example, are a corporation's arrangement to make payments to preserve its franchise, *Tucker v. Commissioner*, 226 F.2d 177 (8th Cir. 1955); a trust in lieu of alimony, *Stern v.*

*Commissioner,* 137 F.2d 43 (2d Cir.1943); and a corporation's settlement of a suit also affecting the taxpayer, *Ruben v. Commissioner,* 97 F.2d 926 (8th Cir.1938). These cases rest on facts peculiar to themselves, in contexts very different from that provided by a fee-shifting statute. Although, as the Sinyards note, there are several hundred such statutes enacted by Congress, they present no precedent where the shift of the obligation to pay the lawyer from the lawyer's client to the defendant has relieved the client from the constructive receipt of income when his obligation to the lawyer is satisfied.

■ Indeed, the Sinyards' arguments are contrary to prior case law and the plain language of the ADEA statute. Under the ADEA, attorney's fees are available to prevailing plaintiffs, not to plaintiff's counsel. 29 U.S.C. § 626(b) (expressly incorporating provisions pertaining to attorney's fees under the Fair Labor Standards Act, 29 U.S.C. § 216(b)); *see Evans v. Jeff D.,* 475 U.S. 717, 730–32, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) (holding that while Congress expected fee shifting to attract competent counsel to represent citizens deprived of their civil rights, it did not bestow fee awards upon attorneys). As the Supreme Court held in a civil rights case brought under 42 U.S.C. § 1988, "it is the party, rather than the lawyer" who is eligible for fees under the fee-shifting statute. *Venegas v. Mitchell,* 495 U.S. 82, 87, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990); *Gilbrook v. City of Westminster,* 177 F.3d 839, 874–75 (9th Cir.1999) (recognizing that fee awards belong to the prevailing party under civil rights statute, 42 U.S.C. § 1988); *Image Tech. Serv., Inc. v. Eastman Kodak Co.,* 136 F.3d 1354, 1357 (9th Cir.1998) (holding that attorney fees awarded under the Clayton Act should be paid to the successful party itself).

In our case, the Sinyards bound themselves to pay Winthrop & Weinstine one-third of what they received. When IDS satisfied this obligation, the Sinyards were so much the richer. That they never laid hands on the money paid to the lawyers does not obliterate their constructive receipt. The Sinyards are therefore liable for the deficiency resulting from the workings of the AMT. *Benci–Woodward v. Commissioner,* 219 F.3d 941 (9th Cir. 2000), *cert denied,* 531 U.S. 1112, 121 S.Ct. 855, 148 L.Ed.2d 770 (2001); *Coady v. Commissioner,* 213 F.3d 1187 (9th Cir. 2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1604, 149 L.Ed.2d 470 (2001).

The Sinyards suggest that the ADEA is different from many fee-shifting statutes. The legislative history of the ADEA shows an intent to make the plaintiffs whole. The Fair Labor Standards Act remedy incorporated into the ADEA requires a judgment for the plaintiff to provide for attorneys' fees "in addition" to damages. 29 U.S.C. § 216(b).

These observations do not alter the analysis of the tax law. The ADEA does make the injured plaintiff whole. The attorneys' fees are in addition to compensation for what he lost. The tax impact of the attorneys' fees arises from the Alternative Minimum Tax. Without its limitation, the attorneys' fees would be income to the Sinyards, and the income would be wiped out by deduction of the total received. It would be a wash. The anomalous result, no doubt unintended, arises when part of the deduction is blocked by the AMT. We do not think we can change the basic rules of income tax in order to correct this result. *See Benci–Woodward,* 219 F.3d at 944.

■ The Sinyards have two fallback arguments. The first is that James Sinyard was a resident of Alabama when he made the contract with the law firm. Under

Alabama law a contingent fee agreement establishes a lawyer's lien on the recovery, and the fee has been held to be not income to the taxpayer. *Cotnam v. Commissioner*, 263 F.2d 119, 125 (5th Cir.1959). We do not dispute the old Fifth Circuit's statement of Alabama law, but we do not see how the existence of a lien in favor of the taxpayer's creditor makes the satisfaction of the debt any less income to the taxpayer whose obligation is satisfied. Like the Tax Court, we decline to follow *Cotnam*.

The Sinyards' second argument is the settlement achieved more than money damages from the individual plaintiffs. As private attorneys general the plaintiffs reformed the practice and culture of IDS. The lion's share of the lawsuit was work done by the counsel they brought into the case. Hence, some of the attorneys' fees should not be allocated to the individual plaintiffs. The argument has two weaknesses. First, it ignores the EEOC's part in the settlement. Second, the contract between Sinyard and the law firm makes him liable for one-third of the fees without regard to what else beyond monetary damages is achieved.

It is possible that where monetary recovery is little or nonexistent in an ADEA case, the attorneys' fee award would leave the taxpayer owing more tax than anything he received in his ADEA suit. This is not the Sinyards' case. The remedy for such unfairness when it does occur lies with Congress specifically exempting ADEA damages as it has exempted personal injury damages; or the whole issue could be avoided by Congress redesigning the computation of the AMT to permit the full deduction of attorneys' fees.

For the foregoing reasons, the judgment of the Tax Court is AFFIRMED.

McKEOWN, Circuit Judge, dissenting:

The majority concludes that a statutory attorney's fee, awarded by the district court to the Sinyards' attorney under the fee-shifting provision of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, is taxable to the Sinyards as income. This unfortunate result appears to be at odds with the express statutory language, which provides that the attorney's fee award is "in addition" to the plaintiff's recovery, and with the intent of the statute, which is to make the plaintiff whole. Because the majority's conclusion fails to account for the effect of the ADEA's fee-shifting provision, I respectfully dissent.

## I. THE EFFECT OF THE ADEA

In my view, the issue is resolved by interpretation and application of the statute. The analysis starts and ends with the language of the ADEA. The ADEA incorporates the fee-shifting provision of the Fair Labor Standards Act, *see* 29 U.S.C. § 626(b), which states that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant," *id.* § 216(b).

In this case, as we previously determined, "the attorney's fees paid in settlement of the Sinyards' lawsuit were awarded by the court pursuant to the ADEA." *Sinyard v. Commissioner*, No. 99–71369 (Apr. 27, 2001) (order). That is to say, the fee obligation arose by operation of the fee-shifting statute itself; the fees were not part of a settlement, nor were they simply a percentage of a judgment. In this respect, the case before us differs from the cases that we have previously decided. In those cases, we were faced with a settlement agreement or a judgment in favor of the plaintiff, a portion of which the plaintiff then paid to the attorney pursuant to a contingent-fee agreement. *See, e.g., Benci–Woodward v. Com-*

*missioner*, 219 F.3d 941 (9th Cir.2000) (punitive damages award and contingency fee agreement); *Coady v. Commissioner*, 213 F.3d 1187 (9th Cir.2000) (wrongful termination judgment following bench trial and contingency fee agreement); *see also Kenseth v. Commissioner*, 259 F.3d 881, 882–83 (7th Cir.2001) (settlement in age discrimination suit and contingency fee agreement). Under the circumstances of these cases, the plaintiff has received income (the judgment or settlement), the entire amount of which—including the portion paid to the attorney—is taxable to the plaintiff.

In contrast to attorney's fees paid pursuant to a contingent fee, which we have previously held to be governed by state law,[1] we are guided here by the text of the ADEA. The statute provides for two separate forms of recovery. First, there is the "judgment awarded to the plaintiff or plaintiffs." 29 U.S.C. § 216(b). Separate, and "in addition to" the plaintiff's recovery, "[t]he court ... shall ... allow a reasonable attorney's fee to be paid by the defendant." *Id.* So under the statute, the attorney's fees are treated separately from the judgment itself.[2] This approach is consistent with the ADEA's design to ensure that the prevailing party is "made whole." Under the FLSA, "Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs." *Maddrix v. Dize*, 153 F.2d 274 (4th Cir.1946).

Moreover, those fees are a mandatory obligation, *id.* ("[t]he court ... *shall* ... allow" (emphasis added)), which the statute has imposed directly upon the defendant. The defendant itself must pay the plaintiff's attorney's fees, regardless of any obligation that the plaintiff may have to his attorney. Consequently, the defendant's payment of the fees discharges a statutory, not a contractual, burden.

Thus, it is mistaken to describe this as a situation in which "A [the plaintiff] owes B [her attorney] a debt, and C [the defendant] pays the debt on A's behalf." Majority Op. at 13741. If that were an accu-

---

1. On this point, the majority and I disagree. The majority appears to conclude that state law is irrelevant to the taxability of a contractually-determined attorney's fee. Majority Op. at 13743. Our precedents clearly rely on the operation of state law to determine the tax treatment of that portion of the judgment ultimately paid to the attorney. *See Benci–Woodward*, 219 F.3d at 942 ("The question before us is whether the taxpayers may exclude from gross income the portion of a punitive damages award retained by their attorney pursuant to a contingent fee agreement. The answer is no and is dictated by our recent case of *Coady* .... Although *Coady* involved analysis of an attorney lien under Alaska law, the result is the same under California law."); *see also id.* at 943 ("In light of California law...."); *Coady*, 213 F.3d at 1190 ("This case is unlike *Cotnam [v. Commissioner*, 263 F.2d 119 (5th Cir.1959)] and [*Estate of Clarks v. United States*, 202 F.3d 854 (6th Cir.2000)] because *under Alaska law*, attorneys do not have a superior lien or own-

ership interest in the cause of action as they do in Alabama and Michigan ...." (emphasis added)).

2. In relying on this statutory language, I express no opinion on the appropriate tax treatment of attorney's fees awarded under the slightly different language of the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988(b). Although that statute specifies that attorney's fees are to be awarded to "the prevailing party," and although in other contexts the Supreme Court has suggested that it is the prevailing party who retains control over fees awarded pursuant to § 1988, see *Venegas v. Mitchell*, 495 U.S. 82, 87–88, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990); *Evans v. Jeff D.*, 475 U.S. 717, 730–31, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986), that statute is not before us here. Indeed, those cases addressing § 1988 were decided in a different context—namely, client control over the resolution of a case.

rate description, the majority is of course correct that the payment from defendant C to attorney B would be taxable to plaintiff A as income. *Lucas v. Earl,* 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930). Here, defendant C does not satisfy a debt on behalf of plaintiff A; rather, C satisfies its own statutory obligation, imposed by the ADEA.

Indeed, the FLSA-based award is the exclusive basis for fees and supercedes alternative fee arrangements. *See United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n. Local No. 307 v. G & M Roofing & Sheet Metal Co.,* 732 F.2d 495, 504 (6th Cir.1984) ("The fact that the plaintiff has entered into an agreement with the lawyers prosecuting the case does not impact on the statutory burden of the employer. . . ."). In this sense, then, the Sinyards are quite right that their case is distinguishable from *Old Colony Trust Co. v. Commissioner,* 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929). In that venerable case, the Supreme Court considered the tax plight of the estate of William Wood, the president of the American Woolen Company. As part of Wood's compensation, the Company had paid the income tax due on Wood's salary. *Id.* at 720, 49 S.Ct. 499. The question presented was whether these income tax payments also constituted income to Wood. The Court held that they were taxable income. Reasoning that "[t]he payment of the tax by the employers was in consideration of the services rendered by the employee," the Court therefore held it to be "immaterial that the taxes were directly paid over to the government" and famously concluded that "[t]he discharge by a third person of an obligation to him is equivalent to receipt by the person taxed." *Id.* at 729, 49 S.Ct. 499.

Here, by contrast, IDS Financial Services (the defendant in the Sinyards' age

discrimination suits) did not receive consideration in exchange for paying the Sinyards' attorneys. Had it done so, then the situation might be different: We would interpret the contract (that is, the settlement agreement) between the Sinyards and IDS; determine whether the Sinyards' attorneys already had a stake in the funds paid by IDS; and consider the effect of the relevant state law, *see supra* note 1. But that is not the case before us. After the Sinyards and IDS settled their lawsuit, the district court taxed attorney's fees against IDS. When IDS paid those fees to the Sinyards' attorneys, IDS satisfied its own statutory obligation. *Old Colony* is inapposite.

Thus, I conclude that the attorney's fees awarded pursuant to the ADEA's fee-shifting provision are not taxable as income to the Sinyards.

## II. THE EQUITIES

With that legal analysis resolved, I pause to note the inequitable result that befalls plaintiffs in certain of these cases. The taxation to a plaintiff of attorney's fees, combined with the operation of the Alternative Minimum Tax (AMT), sometimes leaves a victorious civil rights plaintiff with a net after-tax loss. For instance:

> If the ratio of attorney's fees to the entire recovery is high enough, a before-tax gain may metamorphose into an after-tax loss. In *Alexander v. Commissioner,* [72 F.3d 938 (1st Cir.1995),] for example, the plaintiff settled a state law employment claim for $250,000 but incurred $245,000 in attorney's fees, for a pre-tax profit of $5,000. Under the AMT, the entire $250,000 recovery was taxable but none of the $245,000 in attorney's fees was deductible. If we assume that the taxpayer files jointly and has no other income, his AMT liability would be $53,900. Under these assumptions, the nondeductibility of the employee's attorney's fees under the AMT

would convert a $5,000 before-tax gain into a $48,900 after-tax loss.

Laura Sager & Stephen Cohen, *How the Income Tax Undermines Civil Rights Law*, 73 *S. Cal. L.Rev.* 1075, 1078 (2000) (footnotes omitted).

This Draconian result under the Tax Code can only undermine our civil rights laws. After all, the purpose of fee-shifting provisions, like the one in the ADEA, is not only to permit plaintiffs without resources to pursue claims but to encourage meritorious civil rights litigation by defraying its cost. But in an example like the one posited above, the "victorious" plaintiff would have been better off *without* the fee-shifting provision—and, indeed, better off if she had never filed her ultimately victorious suit. This result is surprising, to say the least. *See Alexander v. IRS*, 72 F.3d 938, 946 (1st Cir.1995) ("We recognize that, because the amounts involved trigger the AMT and, thus, Taxpayer's deficiency, the outcome smacks of injustice because Taxpayer is effectively robbed of any benefit of the Legal Fee's below the line treatment."). Although I continue to believe that this anomaly must ultimately be resolved by Congress, *Benci–Woodward*, 219 F.3d at 944, it cries out for speedy resolution, particularly in view of the majority's position. Of course my view is that this case need not await statutory reform because the fees were awarded pursuant to the ADEA, not under state contract law.

## III. CONCLUSION

For the foregoing reasons, I conclude that the attorney's fees awarded to the Sinyards' attorneys were not properly taxable as income to the Sinyards. Therefore, I would reverse.