T.C. Memo. 2001-254

UNITED STATES TAX COURT

JACK AND JANET FREEMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13195-99.         Filed September 28, 2001.

<u>William E. Dannemeyer</u>, for petitioners.

<u>James J. Posedel</u>, for respondent.

MEMORANDUM OPINION

WHALEN, <u>Judge</u>:  Respondent determined a deficiency
in petitioners' Federal income tax for 1994 of $77,415.
Petitioners filed the instant petition seeking
redetermination of that deficiency.  They resided in Los
Alamitos, California, at the time.  We must decide the
following three substantive issues:  (1) Whether
petitioners are entitled, pursuant to section 104(a)(2),

to exclude from the gross income reported on their 1994 return the proceeds of a judgment in a State court action in the amount of $314,173.91; (2) if not, whether petitioners may exclude from their gross income for 1994 a portion of the proceeds of the judgment equal to the amount of the attorney's fees paid under a retainer agreement to one of the attorneys who represented them in the State court action; and (3) whether the alternative minimum tax imposed by section 55 violates the Constitution of the United States.  All section references are to the Internal Revenue Code as in effect during 1994, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The facts have been fully stipulated by the parties and are so found.  The stipulated facts and the accompanying exhibits are incorporated into this opinion by this reference.

Petitioners were husband and wife at the end of 1994, the taxable year at issue, and they filed a joint return for that year.  In this opinion, references to petitioner are to Mr. Jack Freeman.

In 1991, after 34 years of service, petitioner was summarily fired by his employer, Thrifty Corp. (Thrifty), a corporation that operates a large chain of retail stores.

At that time, he was vice president/regional manager in charge of coordinating and directing the activities of 11 district managers, and he was responsible for 130 retail stores in the Los Angeles area and Nevada with retail sales of $349 million.

In June 1991, petitioner filed suit against Thrifty in the Superior Court of the State of California for the County of Los Angeles (herein referred to as superior court). Petitioner's complaint included counts for: Breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, fraud and deceit, and specific performance. Thereafter, petitioner amended his complaint by deleting his claim for intentional infliction of emotional distress and adding a claim for age discrimination under the California Fair Employment and Housing Act, Cal. Govt. Code secs. 12900-12996 (Deering 1982 & Supp. 1988) (FEHA).

Initially, petitioner was represented in his suit against Thrifty by Gregory S. Koffman, Esquire. On or about December 15, 1992, petitioner substituted a new attorney to represent him in the suit. Petitioner paid Mr. Koffman a total of $83,411.44 for his services.

Petitioner entered into a retainer agreement with the law offices of his new attorney, the Law Offices of Paul A.

Greenberg.  The agreement states in pertinent part as follows:

2.  Client shall pay to Attorney, upon execution of this Retainer Agreement, the sum of $7,500.00, which shall constitute a nonrefundable retainer fee, in exchange for substituting into this case.

3.  Client shall pay to Attorney, after receipt of the first Trial or Arbitration date set, the sum of $7,500.00, payable equally over a three month period, $2,500.00 per month.

4.  Client shall pay to Attorney upon receiving or filing a Notice of Appeal, the sum of $5,000.00, payable equally over a two month period, $2,500.00 per month.

5.  Attorney shall receive as an additional fee a contingency fee equal to thirty five percent (35%) of the total amount of any sums recovered in this matter, after deducting fifty percent (50%) of the fees paid pursuant to Paragraphs 2, 3 and 4 above.  For example, if $100,000.00 is received as a settlement or award and client has paid $7,500.00 in fees, then Attorney will receive 35% of $96,250.00. Attorney is hereby given a lien for its fees and advances upon any settlement, judgment or award made or secured herein.  IF NO RECOVERY IS OBTAINED, ATTORNEY WILL RECEIVE NO ADDITIONAL FEE, other than those specified in Paragraphs 2, 3 and 4 above.  The fee schedule as set forth above is not set by law but is negotiable between Attorney and client.

* * * * * * *

8.  As security for the fees and costs that will become due to Attorney, Client does hereby give to Attorney a lien on all papers, documents and records of Client, and judgments and settlements concerning the matter.  Client authorizes Attorney to retain from any recovery an amount sufficient to liquidate client's

accrued fees and expenses, on this or any other matter.

Ultimately, petitioner's suit against Thrifty was tried in superior court before a jury on the following four causes of action: Breach of contract, breach of the covenant of good faith and fair dealing, fraud and deceit, and age discrimination under FEHA. The jury returned a special verdict in petitioner's favor. The special verdict states as follows:

> We, the jury in the above entitled action, find the following Special Verdict on the questions submitted to us:
>
> Issue No. 1  Was there an implied agreement between the parties that the plaintiff, Jack Freeman, would not be terminated except for good cause?
>
> Answer "yes" or "no".
>
> Answer:  Yes
>
> If you answered Issue No. 1 "yes", then answer the next issue.  If you answered Issue No. 1 "no", then answer Issue No. 5.
>
> Issue No. 2  Did the defendant, Thrifty Corp., either actually terminate the plaintiff, Jack Freeman, without good cause or constructively terminate the plaintiff, Jack Freeman, without good cause?
>
> Answer "yes" or "no".
>
> Answer: No

If you answered Issue No. 2 "yes", then answer the next issue. If you answered Issue No. 2 "no", then answer Issue No. 5.

Issue No. 5  Did defendant, Thrifty Corp., breach the implied covenant of good faith and fair dealing?

Answer "yes" or "no".

Answer:  Yes

If you answered Issue No. 5 "yes" then answer the next issue. If you answered issue No. 5 "no", then sign and return this veridct [sic].

Issue No. 6  Did such conduct by defendant, Thrifty Corp., cause damage to the plaintiff, Jack Freeman?

Answer "yes" or "no".

Answer:  Yes

If you answered Issue No. 6 "yes", then answer the next issue. If you answered issue No. 6 "no", the [sic] sign and return this verdict.

Issue No. 7  What is the total amount of damages suffered by plaintiff, Jack Freeman, as a result of defendant, Thrifty Corp.'s breach of the implied covenant of good faith and fair dealing?

Answer:  $300,000.00

According to the above special verdict, the jury found that Thrifty had breached an implied covenant of good faith and fair dealing and that Thrifty's conduct had damaged petitioner. The jury further found that the damages suffered by petitioner by reason of Thrifty's breach amounted to $300,000. Petitioner's claim for damages due

to Thrifty's breach of the covenant of good faith and fair dealing was the only cause of action as to which the jury found for petitioner and awarded damages. Petitioner's final award, including interest, totaled $314,173.91.

Thrifty issued a check dated August 11, 1994, in the amount of $314,173.91 in full satisfaction of the judgment against it. The check was made payable jointly to petitioner and his attorneys.

Petitioner's attorney, Mr. Greenberg, received Thrifty's check. He deducted his fees of $114,532.39 from the award, as authorized by the retainer agreement, and disbursed the remaining proceeds of Thrifty's payment, $199,641.52, to petitioner by check dated August 26, 1994. Mr. Greenberg also issued a check to petitioner in the amount of $62.69 to reimburse him for unused cost advances.

Petitioners timely filed their 1994 Federal income tax return, but they did not include any portion of the jury award in their gross income. Respondent issued a notice of deficiency to petitioners. Among other adjustments, respondent determined that petitioners should have included the entire jury award of "$314,174.00" in their gross income for 1994. The notice of deficiency states in part as follows:

It is determined that you received an award in
the amount of $314,174.00 from Thrifty which
was not reported on your return for the taxable
year ended December 31, 1994.  This amount is
determined to be taxable to you because you
have failed to establish that this amount is
excludable from gross income under the provi-
sions of the Internal Revenue Code.  Accordingly,
income is increased in the amount of $314,174.00.

Respondent also adjusted the miscellaneous itemized deductions claimed on Schedule A of petitioners' return, $610, by adding $194,595 to arrive at total miscellaneous itemized deductions of $195,205, before taking into account the 2-percent floor as required by section 67(a).  It appears that the additional miscellaneous itemized deductions allowed in the notice of deficiency relate to the attorney's fees that petitioner paid with respect to his suit against Thrifty, but the record does not readily disclose how respondent computed the amount of the adjustment.  The parties agree that that amount is not correct and the correct amount of the additional miscellaneous itemized deductions is $129,698.70, computed as follows:

| | |
|---|---|
| Attorney's fees paid<br>  to Paul Greenberg, Esq. | $114,532.39 |
| Less:  reimbursement for<br>  unused cost advance | 62.69 |
| Plus:  attorney's fees paid<br>  in 1994 before trial | 15,229.00 |
| Total additional miscellaneous<br>  itemized deductions | 129,698.70 |

Respondent also determined that for 1994 petitioners are liable for alternative minimum tax of $52,303.  The notice of deficiency states as follows:

> It is determined that you are subject to the alternative minimum tax imposed by the Internal Revenue Code on items of tax preference for the taxable year ended December 31, 1994.  We have attached an an [sic] alternative minimum tax worksheet to explain how we computed the alternative minimum tax.

Whether the Court Properly Granted Respondent's Motion To Quash Subpoenas To Compel the Testimony of a Revenue Agent and an Appeals Officer

Petitioners ask the Court to reconsider the granting of respondent's motion to quash the subpoenas issued to a revenue agent and to a manager in respondent's Appeals Office.  According to petitioners' posttrial brief, the agent would have testified that he advised petitioners' accountant that petitioners' "return should be accepted as filed", and the Appeals officer would have testified that he informed petitioners' accountant that "the return was

correct when filed and [he] removed the penalties but * * * that Petitioner still owed the tax."

The proffered testimony would be immaterial to the issues in this case. As we have often observed, a trial before this Court is a proceeding de novo in which our determination as to a taxpayer's tax liability must be based on the merits of the case and not any record developed at the administrative level. See, e.g., Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974). Accordingly, we properly quashed the subject subpoenas.

Whether Petitioners May Exclude From Gross Income the Entire Amount of the Jury Award Under Section 104(a)(2)

The first substantive issue in this case is whether petitioners are entitled to exclude from their gross income for 1994 the amount of the judgment awarded in petitioner's suit against Thrifty, $314,173.91. Petitioners argue that their gross income does not include any part of that amount by reason of section 104(a)(2). During 1994, that provision stated: "gross income does not include * * * the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". The regulations promulgated under section 104(a)(2) make clear

that the scope of excludable damages is limited to those received through prosecution of an action based upon tort or tortlike rights:

> The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.  [Sec. 1.104-1(c), Income Tax Regs.]

After reviewing section 104(a)(2) and the above regulation, the U.S. Supreme Court stated that a taxpayer must meet the following two independent requirements before a recovery may be excluded under section 104(a)(2):

> First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness."  *  *  *  [Commissioner v. Schleier, 515 U.S. 323, 337 (1995).]

Petitioners acknowledge that the damages of $300,000 awarded by the jury were based entirely on petitioner's claim for breach of a covenant of good faith and fair dealing and that the amount paid by Thrifty included interest of $14,173.91.  Petitioners' brief states:

> On May 23, 1994, the jury returned a verdict for Petitioner on the Second Cause of Action, Breach of the Covenant of Good Faith and Fair Dealing in

the amount of $300,000, and with interest,
totaling $314,173.91.

Petitioners also acknowledge that their claim against

Thrifty for breach of the covenant of good faith and fair

dealing is a contract claim and not a claim based upon tort

or tortlike rights.  Petitioners' brief states:

> Petitioner went to trial on four causes of
> action:
>
> 1 -  Breach of Contract, contract
>
> 2 -  Breach of Covenant of Good Faith and Fair
>      Dealing, contract
>
> 3 -  Fraud and Deceit, tort
>
> 4 -  Violation of Fair Employment and Housing
>      Act, tort-like

Petitioners' brief also states:

> The jury in Petitioner's case may have given
> him an award on the second cause of action for
> breach of the covenant of good faith and fair
> dealing, but the allegations of the complaint
> clearly involved a tort and tort like claim.

Nevertheless, petitioners contend that the entire award is

excludable from gross income under section 104(a)(2) as

damages from personal injuries.  To restate petitioners'

position more succinctly, petitioners contend that even

though the amount awarded in the superior court action

consists of damages for the breach of a contractual

obligation owed to petitioner and of interest, and does not involve damages received through prosecution of tort or tort-type rights, the entire award is excluded from gross income under section 104(a)(2).

Petitioners ask us to reach the same conclusion, i.e., that the entire jury award is excluded from gross income under section 104(a)(2), on the basis of a reading of Threlkeld v. Commissioner, 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988). Petitioners' posttrial brief makes the following argument:

> [In Threlkeld v. Commissioner, supra,] The court noted at page 1307 that even though the settlement agreement allocated the sum of $75,000 for damages to petitioners [sic] professional reputation, (the taxability of $21,500 [of] which was the issue in the case), the settlement agreement does not necessarily control in deciding whether the claim being settled arises from a personal injury. The court said:
>
>> "We therefore, look to the petitioners [sic] allegations in his complaint in the State court."
>
> The relevance of this last statement to Petitioner is most important to note. Namely, the jury may have given an award on the second cause of action for breach of the covenant of good faith and fair dealing, but the meaning of the language from Threlkeld is that to answer the question of whether the award represents compensation for personal injuries, the court said the allegations in the complaint must be examined.

Petitioners do not adequately explain how an examination of the complaint in the superior court action supports the conclusion that the entire award is excludable from income under section 104(a)(2).

We disagree with petitioners' reading of Threlkeld v. Commissioner, supra, and with their conclusion that the entire award in the superior court action is excludable from income under section 104(a)(2). In our view, none of the award is excludable.

In Threlkeld v. Commissioner, supra at 1298, the Court held that in deciding in a particular case whether the damages were received on account of "personal injuries", the nature of the claim as defined under State law, and the concept of personal injury thereby embodied, are the appropriate criteria in a case in which "damages are clearly allocated to an identifiable claim". Id. at 1305-1306. The Court pointed out that State law may be of limited assistance in certain cases, such as in a settlement where it is unclear what claim is settled or where there are several claims not all of which involve personal injuries. Id. In such cases, the Court pointed out: "We must look to various factors, including the allegations in the State court pleadings, the evidence

adduced at trial, a written settlement agreement, and the intent of the payer."  Id. at 1306.

In this case, unlike Threlkeld v. Commissioner, supra, the award to petitioner in the superior court action is set forth in the jury's special verdict.  The award was based entirely on petitioner's claim that Thrifty breached an implied covenant of good faith and fair dealing.  Thus, in this case, in determining the basis for the damages awarded to petitioner in the superior court action, the jury's special verdict takes precedence over any of the other factors mentioned by the Court in Threlkeld v. Commissioner, supra.

The jury award in the instant case was based upon a single identifiable cause of action, breach of an implied covenant of good faith and fair dealing.  Under California law, that cause of action is not a tort.  Mundy v. Household Fin. Corp., 885 F.2d 542, 544 (9th Cir. 1989) ("the California Supreme Court has spoken decisively, holding in Foley [v. Interactive Data Corp., infra] that an allegation of breach of the implied covenant is a purely contractual claim"); Foley v. Interactive Data Corp., 765 P.2d 373 (Cal. 1988); see Cade v. Commissioner, T.C. Memo. 1999-394.  Accordingly, in the instant case, no part of the recovery in the superior court action can be excluded from

gross income under section 104(a)(2) because the underlying cause of action giving rise to the recovery was based entirely upon a contract cause of action and not upon tort or tortlike rights as required by section 1.104-1(c), Income Tax Regs. See Commissioner v. Schleier, 515 U.S. 323 (1995).

Whether Petitioners May Exclude From Gross Income a Portion of the Recovery Equal to the Amount Paid to Their Attorneys Under the Contingent Fee Agreement

Petitioners argue that if we hold that section 104(a)(2) does not apply, with the result that the judgment proceeds are includable in their 1994 gross income, then the portion of the judgment paid directly to their attorneys under the retainer agreement is excludable from gross income. Petitioners ask us to follow Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959), revg. in part and affg. on another issue 28 T.C. 947 (1957), and Estate of Clarks v. United States, 202 F.3d 854 (6th Cir. 2000). In Cotnam v. Commissioner, supra, the Court of Appeals for the Fifth Circuit held that the amount of a contingent fee paid to the taxpayer's attorneys out of a judgment was not income to the taxpayer because under Alabama law a contingent fee contract operates as a lien on the recovery that, in effect, transfers part of a plaintiff's claim to the attorneys. See also Srivastava v. Commissioner, 220

F.3d 353, 365 (5th Cir. 2000), revg. and remanding in part, and affg. on another issue T.C. Memo. 1998-362; Davis v. Commissioner, 210 F.3d 1346 (11th Cir. 2000) ("this panel [of the Court of Appeals for the 11th Circuit] is bound by Cotnam, which can be overruled only by the en banc Court"), affg. T.C. Memo. 1998-248. In Estate of Clarks v. United States, supra, the Court of Appeals for the Sixth Circuit followed Cotnam v. Commissioner, supra, and held that the interest portion of a judgment in an action for personal injuries could be offset by the contingent legal fees paid to the taxpayer's attorney because an attorney's lien under Michigan law was similar to an attorney's lien under Alabama law.

Petitioners acknowledge that we recently reconsidered the same issue and reached the opposite conclusion in Kenseth v. Commissioner, 114 T.C. 399 (2000), affd. 259 F.3d 881 (7th Cir. 2001). In that case, the taxpayer was one of a class of persons who had entered into an agreement with their former employer in settlement of a class action for age discrimination. The taxpayer's share of the gross settlement amount was $229,501.37, of which the taxpayer received $126,470.42, after the former employer had withheld employment taxes of $11,230.41 and the taxpayer's attorneys had withheld attorneys' fees of $91,800.54. The

issue in that case was whether the taxpayer could offset his recovery in the age discrimination suit by the attorney's fees withheld by his attorney, $91,800.54. We held that the taxpayer's gross income included all the proceeds of the settlement, including the portion used to pay his attorneys under the contingent fee agreement. We explained our position regarding this issue as follows:

> This Court has, for an extended period of time, held the view that taxable recoveries in lawsuits are gross income in their entirety to the party-client and that associated legal fees-- contingent or otherwise--are to be treated as deductions.[5] See <u>Bagley v. Commissioner</u>, 105 T.C. 396, 418-419 (1995), affd. 121 F.3d 393, 395-396 (8th Cir. 1997); <u>O'Brien v. Commissioner</u>, 38 T.C. 707, 712 (1962), affd. per curiam 319 F.2d 532 (3d Cir. 1963); <u>Benci-Woodward v. Commissioner</u>, T.C. Memo. 1998-395, on appeal (9th Cir. Feb. 2, 1999). In <u>O'Brien</u>, we held that "even if the taxpayer had made an irrevoc- able assignment of a portion of his future recovery to his attorney to such an extent that he never thereafter became entitled thereto even for a split second, it would still be gross income to him under" assignment of income principles. <u>O'Brien v. Commissioner</u>, <u>supra</u> at 712. "Although there may be considerable equity to the taxpayer's position, that is not the way the statute is written." <u>Id.</u> at 710. * * *

---

[5]This view is based on the well-established assignment of income doctrine that was originated by the Supreme Court in <u>Lucas v. Earl</u>, 281 U.S. 111 (1930). <u>Lucas v. Earl</u>, <u>supra</u>, has been relied on by this Court for assignments of income involving both related and unrelated taxpayers. [<u>Id.</u> at 411.]

In <u>Kenseth v. Commissioner</u>, <u>supra</u>, we reviewed and declined to follow the cases relied upon by petitioners, <u>Cotnam v. Commissioner</u>, <u>supra</u>, and <u>Estate of Clarks v. United States</u>, <u>supra</u>.  We stated as follows:

> After further reflection on <u>Cotnam</u> and now <u>Estate of Clarks v. United States</u>, <u>supra</u>, we continue to adhere to our holding in <u>O'Brien</u> that contingent fee agreements, such as the one we consider here, come within the ambit of the assignment of income doctrine and do not serve, for purposes of Federal taxation, to exclude the fee from the assignor's gross income.  We also decline to decide this case based on the possible effect of various States' attorney's lien statutes.  [<u>Kenseth v. Commissioner</u>, <u>supra</u> at 412; fn. ref. omitted.]

In <u>Kenseth v. Commissioner</u>, <u>supra</u>, we noted that there is a disagreement about this issue among the Courts of Appeals.  We reviewed and agreed with <u>Baylin v. United States</u>, 43 F.3d 1451 (Fed. Cir. 1995), and <u>Alexander v. Commissioner</u>, 72 F.3d 938 (1st Cir. 1995), affg. T.C. Memo. 1995-51, cases in which the courts had rejected arguments similar to the argument made by petitioners in the instant case; see also <u>Young v. Commissioner</u>, 240 F.3d 369 (4th Cir. 2001), affg. 113 T.C. 152 (1999).

Petitioners acknowledge that the court to which an appeal of this case lies, the Court of Appeals for the Ninth Circuit, has rejected their position in <u>Benci-</u>

Woodward v. Commissioner, 219 F.3d 941 (9th Cir. 2000), affg. T.C. Memo. 1998-395. In that case, the court held that an award of punitive damages was fully includable in the taxpayers' gross income, notwithstanding the fact that a portion of the award was retained by the taxpayers' attorney, pursuant to a contingent fee agreement. Id. The Court of Appeals noted that under California law, the law applicable in that case and in the instant case, "an attorney lien does not confer any ownership interest upon attorneys or grant attorneys any right and power over the suits, judgments, or decrees of their clients." Id. at 943; see also Brewer v. Commissioner, T.C. Memo. 1997-542 (attorney's fees paid with respect to action for statewide discrimination in California), affd. without published opinion 172 F.3d 875 (9th Cir. 1999). Accordingly, the Court of Appeals found no reason to distinguish the payment to the taxpayers' attorney under the contingent fee agreement in that case from the attorneys' fees at issue in Coady v. Commissioner, 213 F.3d 1187 (9th Cir. 2000), affg. T.C. Memo. 1998-291.

In Coady v. Commissioner, supra, the Court of Appeals for the Ninth Circuit rejected a taxpayer's argument that a judgment for lost wages and benefits arising out of her wrongful termination should be reduced by contingent legal

fees and litigation costs on the ground that the taxpayer had "assigned" those amounts to her attorneys.  Id.  The court reasoned that the judgment in the wrongful termination action was fully includable in the taxpayer's gross income under the broad sweep of section 61, which defines gross income as "all income from whatever source derived" and the taxpayers had "simply used a portion of the award subsequently to discharge their personal liability to their attorneys."  Id. at 1190-1191.  The Court of Appeals noted that, under longstanding authority of the U.S. Supreme Court, income must be taxed to the person who earns it, and a taxpayer cannot escape such taxation by procuring payment directly to creditors or by making an anticipatory assignment of the income.  See United States v. Basye, 410 U.S. 441, 449 (1973); Helvering v. Eubank, 311 U.S. 122, 124-125 (1940); Helvering v. Horst, 311 U.S. 112 (1940); Lucas v. Earl, 281 U.S. 111, 114-115 (1930).

Most recently, the Court of Appeals for the Ninth Circuit again declined to follow Cotnam in Sinyard v. Commissioner, ___ F.3d ___ (9th Cir. 2001), affg T.C. Memo. 1998-364.  That case involved attorney's fees paid in connection with the settlement of two class actions brought under the Age Discrimination in Employment Act, Pub. L. 90-

202, 81 Stat. 602, currently codified at 29 U.S.C. secs. 621-634 (1994).

Arguments similar to petitioners' in the instant case were fully considered and rejected by this Court in Kenseth v. Commissioner, 114 T.C. 399 (2000), and by the Court of Appeals for the Ninth Circuit in Sinyard v. Commissioner, supra, Benci-Woodward v. Commissioner, supra, and Coady v. Commissioner, supra.  We have no reason to reconsider the issue in this case.  Accordingly, we sustain respondent's determination that the judgment is fully includable in petitioners' gross income and cannot be reduced by the amount retained by petitioner's attorney under the retainer agreement.

Whether the Alternative Minimum Tax Is Unconstitutional

In the notice of deficiency, respondent treated the attorneys' fees that petitioner paid in connection with his superior court action as a "miscellaneous itemized deduction", as defined by section 67(b).  In the case of an individual, a miscellaneous itemized deduction is not deductible in computing alternative minimum taxable income. See sec. 56(b)(1)(A)(i).  In petitioners' case, this has the effect of causing the tentative minimum tax computed under section 55(b) to exceed petitioners' regular tax and, thus, causes petitioners to be liable for the alternative

minimum tax in the amount of the excess.  See sec. 55(a).
See generally Benci-Woodward v. Commissioner, supra at 994
(holding that legal expenses are classified as
miscellaneous itemized deductions and, as such, are not
allowed as deductions for purposes of computing alternative
minimum tax liability).

In the notice of deficiency, respondent determined
that petitioners are liable for alternative minimum tax of
$52,303.  This was based upon the treatment of attorneys'
fees of $194,595 as an additional miscellaneous itemized
deduction.  As mentioned above, the parties agree that
the attorneys' fees, to be treated as an additional
miscellaneous itemized deduction, are $129,698.70, rather
than $194,595.

Petitioners do not take issue with respondent's
computation of the amount of alternative minimum tax in
this case.  They argue:

> THE FAILURE OF THE ALTERNATIVE MINIMUM
> TAX TO ALLOW A DEDUCTION FOR ATTORNEYS
> FEES AND COSTS, WHICH RESULTS IN A
> DOUBLE TAXATION OF THE SAME INCOME TO
> PETITIONER AND HIS ATTORNEYS, [IS] A
> VIOLATION OF THE CONSTITUTIONAL RIGHTS
> OF PETITIONER IN THAT IT IS A TAKING
> WITHOUT DUE PROCESS OF LAW AND A DENIAL
> OF THE EQUAL PROTECTION OF THE LAW IN
> VIOLATION OF THE 5TH AND 14TH AMENDMENT
> [sic] TO THE FEDERAL CONSTITUTION.

Petitioners acknowledge that the constitutionality of the alternative minimum tax was upheld in Okin v. Commissioner, T.C. Memo. 1985-199, affd. 808 F.2d 1338 (9th Cir. 1987), but they argue that their case "is totally different" from Okin. We disagree.

In Okin v. Commissioner, supra, the taxpayer's principal argument was that under a prior version of the alternative minimum tax, viz the Revenue Act of 1978, Pub. L. 95-600, sec. 421, 92 Stat. 2763, 2871, alternative minimum taxable income should be computed using "average annual adjusted gross income", a concept taken from the income averaging provisions of sections 1301-1305. We rejected the taxpayer's argument and pointed out that, in defining alternative minimum taxable income, the statute used the words "gross income" and did not refer to the income averaging provisions or to any adjusted figure. Okin v. Commissioner, supra. After trial, the taxpayer made a general argument, "not supported by any specific references to the Constitution or citations to precedent", that section 55 is unconstitutional. Id. We rejected that argument on the basis of cases upholding the constitutionality of the so-called add-on minimum tax under former section 56. See Wyly v. United States, 662 F.2d 397, 403-406 (5th Cir. 1981); Graff v. Commissioner, 74

T.C. 743, 765-767 (1980), affd. per curiam 673 F.2d 784
(5th Cir. 1982).

On appeal, the Court of Appeals for the Ninth
Circuit also rejected the taxpayer's challenge to the
constitutionality of the alternative minimum tax imposed by
section 55.  Okin v. Commissioner, 808 F.2d at 1341-1342.
The Court of Appeals rejected the taxpayer's argument that,
as applied in his case, the alternative minimum tax
constitutes a "taking of property without due process of
law and without adequate compensation."  Id.  The court
agreed that the effect of the alternative minimum tax was
to virtually nullify the taxpayer's tax savings under the
income averaging provisions but pointed out that that
effect was consistent with congressional intent.  Id. at
1341.  The court noted that "the due process clause
ordinarily places no limits upon the congressional taxing
power."  Id. at 1341-1342; see A. Magnano Co. v. Hamilton,
292 U.S. 40, 44 (1934).  The court further rejected the
taxpayer's contention that taking away the benefits of
averaging through the application of the alternative
minimum tax is discriminatory.  According to the court, in
enacting the alternative minimum tax, Congress intended "to
remedy general taxpayer distrust of the system growing from
large numbers of taxpayers with large incomes who were yet

paying no taxes."  Okin v. Commissioner, 808 F.2d at 1342. The court stated that that intent is a legitimate governmental end as to which reducing the benefits of averaging bore a reasonable relation.  Id.

The instant case involves the benefits of a miscellaneous itemized deduction, rather than the benefits of income averaging.  Nevertheless, the reasoning of the Court of Appeals in Okin v. Commissioner, supra, applies. Congress provided that, in computing alternative minimum taxable income, no deduction shall be allowed for miscellaneous itemized deductions as defined by section 67(b).  Sec. 56(b)(1)(A)(i).  Congress thereby restricted the benefits from miscellaneous itemized deductions through the application of the alternative minimum tax.  Cf. Weiser v. United States, 959 F.2d 146 (9th Cir. 1992).  The alternative minimum tax no more violates the due process or equal protection requirements of the U.S. Constitution in this case, involving miscellaneous deductions, than in Okin, which involved the benefits of income averaging. See Lickiss v. Commissioner, T.C. Memo. 1994-103.  See generally Wallach v. United States, 800 F.2d 1121 (Fed. Cir. 1986); Gajewski v. Commissioner, 84 T.C. 980, 984-985 (1985); Klaassen v. Commissioner, T.C. Memo. 1998-241, affd. without published opinion, 182 F.3d 932 (10th Cir.

1999); <u>Keese v. Commissioner</u>, T.C. Memo. 1995-417; <u>Christine v. Commissioner</u>, T.C. Memo. 1993-473; <u>Ross v. Commissioner</u>, T.C. Memo. 1987-500.

Finally, even if we agreed with petitioners that the application of the alternative minimum tax produces an inequitable result in this case, it is not for us to change that result. It is well established that such an equitable argument cannot overcome the plain meaning of the statute. See, <u>Sinyard v. Commissioner</u>, ___ F.3d ___; <u>Benci-Woodward v. Commissioner</u>, 219 F.3d at 944; <u>Alexander v. Commissioner</u>, 72 F.3d at 946-947; <u>Weiser v. United States</u>, <u>supra</u> at 148-149; <u>Okin v. Commissioner</u>, 808 F.2d at 1342.

Based upon the foregoing, and concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.
