T.C. Summary Opinion 2009-28

UNITED STATES TAX COURT

LUIS H. AND MARGARITA M. CARRANZA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7969-06S.                    Filed February 26, 2009.

Luis H. and Margarita M. Carranza, pro sese.

<u>Jonathan H. Sloat</u>, for respondent.

GERBER, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463[1] of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,

--------

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for 2003, the taxable year
under consideration, and all Rule references are to the Tax Court
Rules of Practice and Procedure.

and this opinion shall not be treated as precedent for any other case.

Respondent determined a $19,714 income tax deficiency for petitioners' 2003 tax year and a $3,943 accuracy-related penalty under section 6662(a).  Respondent, pursuant to section 6214(a), filed an answer and an amended answer in which he sought a $15,503 increase in the income tax deficiency and a $3,100.40 increase in the accuracy-related penalty, for a total deficiency of $35,217 and a total accuracy-related penalty of $7,043.40. The initial income tax deficiency was based on petitioners' failure to report, as income, Social Security benefits and settlement proceeds of a wrongful termination action brought by Luis Carranza.  The increased deficiency also stems from the settlement of the wrongful termination action.  The questions remaining for our consideration are whether any of the proceeds of the wrongful termination action are includable in petitioners' gross income and whether petitioners are liable for an accuracy-related penalty.

## Background

Petitioners resided in California at the time their petition was filed.  Luis H. and Margarita M. Carranza received Social Security benefits of $13,710 and $12,294, respectively, for the taxable year 2003 but failed to report these amounts as income on their joint return for that year.  Mr. Carranza worked for Spears

Manufacturing Co. (Spears) as a foreman/supervisor 6 days a week and 10 hours per day.  Spears manufactured mainly plastic, but also some brass, pipe fittings used for plumbing.  Mr. Carranza was in charge of Spears's production operation, and these responsibilities burdened him greatly and caused him to come home exhausted.  Spears's employees worked three shifts, and Mr. Carranza supervised the foremen of all three shifts.  He was often called at home to deal with problems that occurred during the night shift.  Mr. Carranza had worked for Spears for 25 years and was well liked by the owner, Wayne Spears.  The pressure of his job led to anxiety and hypertension, which, in turn, may have caused a central arterial occlusion and loss of sight in Mr. Carranza's left eye during 1999.

Sometime before 2000 Mr. Carranza developed a hematoma in his leg which affected nerves and muscles so that it was difficult for him to walk.  In time his leg atrophied, and he lost the ability to control it.  He became unable to walk stairs and to function effectively in his supervisory position at Spears.  On or about November 5, 2001, upon the advice of a doctor, he was assigned lighter responsibilities at Spears.  Mr. Spears and others made demands on Mr. Carranza that were beyond his lessened physical capabilities, expecting his performance to be at the same level as before his physical problems.  In addition, comments were made about his lessened physical

capabilities that caused him great humiliation. On April 29, 2002, he was dismissed from his position at Spears. His anxiety became more severe after he was dismissed. Mr. Carranza was in the care of three different psychiatrists and because of his mental and physical condition was unable to obtain another job.

After Mr. Carranza was dismissed, Mrs. Carranza negotiated a severance agreement with Spears under which he was paid $1,000 per week for 19 weeks. Around this time Mr. Carranza contacted an attorney. On or about July 11, 2002, Mr. Carranza commenced an action against Spears in Los Angeles County Superior Court. The complaint sought damages for violations of the California Fair Employment and Housing Act, including disability discrimination, age discrimination, wrongful termination in violation of public policy, and breach of implied contract due to wrongful termination of employment.

In the complaint Mr. Carranza alleged that he was "disabled" because of the medical conditions of vascular embolic disease, hypertension, and glaucoma and that he had been suffering from these conditions since June 1999. He also specifically alleged he was disabled because of the hematoma in his left leg. Mr. Carranza sought judgment against Spears for all medical expenses, general damages for emotional distress and mental suffering, exemplary and punitive damages, and attorney's fees.

Mr. Carranza also applied for disability payments from the Social Security Administration, and on December 1, 2002, he was advised of his entitlement to a monthly disability check.  He also filed a claim for workers compensation with the State of California, which on August 9, 2005, resulted in a $49,000 settlement, with $45,000 being paid to him and a net recovery of $38,250 after the payment of $6,750 in legal fees.

During 2003 the suit against Spears was settled for $162,500.  Of the $162,500, $97,500 was paid directly to Mr. Carranza "for personal injury in the form of emotional distress damages".  The remaining $65,000 was paid directly to his attorney as "a payment for the attorney's fees incurred on * * * [Mr. Carranza's] behalf".  The parties agreed that the $97,500 "in settlement of claims for personal injury in the form of emotional distress damages resulting from the conduct that is the subject of tort or tort-like claims" was to be reported on a Form 1099-MISC, Miscellaneous Income, but that no withholding tax would be taken from the payment.  With respect to the $65,000 paid to Mr. Carranza's attorney, a Form 1099-MISC would be sent only to the attorney.  Of the $97,500 settlement amount, Mr. Carranza received a net amount of $93,554.24 after reduction of $3,945.76 for costs assessed against him.

Petitioners' 2003 Form 1040, U.S. Individual Income Tax Return, was prepared by a professional income tax return preparer

(preparer) who had been preparing their income tax returns for a few years before 2003. Petitioners provided the preparer with the Form 1099-MISC and other information about the settlement of the suit with Spears and with all of the medical records. The preparer concluded that the $97,500 settlement amount Mr. Carranza received was not includable in income, and petitioners relied upon his judgment with respect to that decision. Petitioners provided their preparer with information about the receipt of Social Security payments during 2003, but no part of it was reported on their tax return. Even if it had been, it would not have been taxable according to the amount of income the preparer reported on the return. Petitioners' 2003 income tax return did not include their Social Security payments, the $97,500 settlement proceeds they received, or the $65,000 Mr. Carranza's attorney received.

## Discussion

In general the Commissioner's determination in a notice of deficiency is presumed correct. Welch v. Helvering, 290 U.S. 111, 115 (1933). In pertinent part, Rule 142(a)(1) provides the general rule that "The burden of proof shall be upon the petitioner". Petitioners bear the burden of showing the settlement is not includable in income as respondent determined it is. There is no dispute about the burden of proof or the shifting of same under section 7491. Respondent bears the burden

of proof with respect to the increased deficiency and the increased accuracy-related penalty. See Rule 142(a)(1). Respondent also bears the burden of production with respect to the section 6662(a) accuracy-related penalty. See sec. 7491(c).

Petitioners have stipulated that they received Social Security payments during 2003 that were not included in their income on their return. Such payments have been held to be taxable and are includable in income in an amount determined under a statutory formula. Sec. 86(a), (b), and (c); see, e.g., Green v. Commissioner, T.C. Memo. 2007-217. The remaining issues we consider are whether any portion of the settlement with Spears is includable in petitioners' 2003 income and whether they are liable for an accuracy-related penalty with respect to any portion of a resulting understatement.

Mr. Carranza became progressively unable to perform his duties at Spears. His physical problems began during 1999 and became progressively worse until his dismissal during 2003. He also suffered emotionally because of his physical problems and from humiliation experienced at Spears. Mr. Carranza sued Spears and alleged that he was "disabled" because of the medical conditions of vascular embolic disease, hypertension, hematoma in his left leg, and glaucoma and that he had been suffering from these conditions since June 1999. In the complaint Mr. Carranza sought judgment against Spears for all medical expenses, general

damages for emotional distress and mental suffering, exemplary
and punitive damages, and attorney's fees.

Mr. Carranza and Spears settled the suit and entered into a
settlement agreement laying out the basis for the settlement.
Although Mrs. Carranza testified that Mr. Carranza's settlement
and recovery from Spears were for physical injuries caused by his
working conditions, the settlement agreement unambiguously
attributed the settlement to his "personal injury in the form of
emotional distress damages resulting from conduct that is the
subject of tort or tort-like claims".  Section 104, as is
pertinent to this case, provides:

> SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS.
>
> (a) In General.--Except in the case of amounts
> attributable to (and not in excess of) deductions
> allowed under section 213 (relating to medical, etc.,
> expenses) for any prior taxable year, gross income does
> not include--
>
>> (1) amounts received under workmen's
>> compensation acts as compensation for personal
>> injuries or sickness;
>>
>> (2) the amount of any damages (other than
>> punitive damages) received (whether by suit or
>> agreement and whether as lump sums or as periodic
>> payments) on account of personal physical injuries
>> or physical sickness;

Section 104(a)(2) makes it clear that for damages to be
excluded from gross income, they must be received "on account of
personal physical injuries or physical sickness".  Section 104(a)
also specifically provides that "For purposes of paragraph (2),

emotional distress shall not be treated as a physical injury or physical sickness." The circumstances in this case are somewhat convoluted because Mr. Carranza received Social Security benefits because of physical disability. He also sought California workers compensation and received a settlement for his physical disability. With respect to his suit against Spears, however, he did not seek damages for physical disability caused by his working conditions. Instead, he sought damages for emotional distress and mental suffering. Likewise, the settlement of the litigation with Spears was for emotional distress damages.

In order for the Spears settlement proceeds to qualify for a section 104(a)(2) exclusion, petitioners must show that: (1) The underlying cause of action giving rise to the recovery was "'based upon tort or tort type rights'"; and (2) the "'damages were received * * * on account of personal [physical] injuries or [physical] sickness.'" See Commissioner v. Schleier, 515 U.S. 323, 336-337 (1995) (adjusted to comport with subsequent legislation) (quoting United States v. Burke, 504 U.S. 229, 234 (1992)).

There is no question about whether the damages were for "tort or tort type rights". The question we consider is whether the damages were for a physical injury. When damages are paid under a settlement agreement, courts generally first look to the express language of the agreement. Rivera v. Baker West, Inc.,

430 F.3d 1253, 1257 (9th Cir. 2005). Mr. Carranza's agreement with Spears expressly attributes the settlement to emotional distress and mental suffering. Moreover, he did not allege in his complaint initiating the settled litigation that Spears employees or work conditions had caused him physical injury. There is some evidence in this record that could support a finding that his work conditions were a contributing factor to some of his physical problems, but that was not the focus of the litigation and, clearly not the purpose of the settlement. See id. at 1257-1258. With such compelling and explicit language, we cannot find otherwise. Accordingly, we find that Mr. Carranza's settlement with Spears was not for physical injury.

We now consider the portion of the settlement that petitioners are required to include in income. The total settlement, agreed to between Mr. Carranza and Spears, was $162,500. The $162,500 constituted "the entire monetary consideration provided to" Mr. Carranza, as agreed to by the parties. Of that amount, $97,500 was paid directly to Mr. Carranza for personal injury due to emotional distress, and a Form 1099-MISC was issued to him for $97,500. The remaining $65,000 was paid directly to Mr. Carranza's attorney for his services, and a Form 1099-MISC was issued to the attorney in that amount. Accordingly, the parties intended by their settlement that the attorney be accountable for the $65,000.

Respondent, in the deficiency notice and on the basis of the Form 1099-MISC, initially included only $97,500 in petitioners' income for 2003. That adjustment, along with the unreported Social Security benefits, was the basis for the $19,714 income tax deficiency and the $3,943 accuracy-related penalty. Respondent, by an answer and amended answer, sought a total increase in the income tax deficiency of $15,503 and a total increase in the accuracy-related penalty of $3,100.40. Those increases are attributable to inclusion of the $65,000 in petitioners' gross income for 2003.[2]

Until 2005 there had been differing treatment by courts with respect to the attorney's fees portion of damage settlements and/or litigation. Some courts treated the attorney's fees portion as the taxpayer's income, even though paid directly to the attorney. Others treated the attorney's fees portion as not includable in the taxpayer's income. In Commissioner v. Banks, 543 U.S. 426 (2005), the Supreme Court resolved those differences and held that the portion of the settlement paid to attorneys was income to the taxpayer under the anticipatory assignment of income doctrine established in Lucas v. Earl, 281 U.S. 111 (1930).

_____

[2]Respondent also allowed petitioners an offsetting miscellaneous itemized deduction for the $65,000 attorney's fees subject to the 2-percent threshold and the alternative minimum tax limitations on certain deductions, which are computational issues. See secs. 56(b), 67.

The increased income tax deficiency is based on both the inclusion of the $65,000 paid directly to Mr. Carranza's attorney and the alternative minimum tax that is generated, in part, by the attorney's fees itemized deduction not being allowed for computation of the alternative minimum tax. See, e.g., Benci-Woodward v. Commissioner, 219 F.3d 941, 944 (9th Cir. 2000), affg. T.C. Memo. 1998-395.

The facts of this case reflect that Mr. Carranza was entitled to the entire $162,500 and that the $65,000 paid directly to his attorney was money to which Mr. Carranza was entitled under the settlement. Under these circumstances and because of the current state of the law, petitioners are liable for the determined income tax deficiency and an increased deficiency in income tax based on the inclusion of the $65,000, the deduction for attorney's fees, and the application of the alternative minimum tax provisions.

Respondent also determined a 20-percent accuracy-related penalty under section 6662(a) on the entire underpayment of tax. Respondent determined that petitioners are liable for the penalty because they substantially understated their income tax within the meaning of section 6662(b)(2) and (d)(1).

In order for the penalty to apply, the understatement must exceed the greater of 10 percent of the tax required to be shown on the income tax return or $5,000. Sec. 6662(d)(1)(A).

Petitioners' 2003 income tax return reported no (zero) income tax liability. Accordingly, the understatement of tax decided in this case is substantial.

An accuracy-related penalty is not imposed on any portion of the understatement as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). Reliance on the advice of a tax professional may constitute reasonable cause and good faith if under all the facts and circumstances the reliance is reasonable and in good faith. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 98 (2000), affd. 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(c)(1), Income Tax Regs. To qualify for this exception, a taxpayer must prove by a preponderance of the evidence that: (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Associates, P.A. v. Commissioner, supra at 98-99.

Petitioners, who have no expertise in or understanding of the tax laws, used and relied upon a professional preparer to prepare their 2003 income tax return. They had used the same preparer for prior years' returns. The preparer was called by respondent to testify at trial about the circumstances under which he prepared petitioners' income tax return. Considering

Mrs. Carranza's testimony and that of the preparer, we conclude that he was a competent professional with sufficient expertise to prepare petitioners' tax return. We also conclude that the preparer had accurate and sufficient information from which to evaluate whether petitioners' Social Security benefits and the Spears settlement proceeds were includable in petitioners' gross income. Finally, we conclude, under the circumstances of this case, that it was reasonable for petitioners to rely on their preparer.

The evidence shows that Mr. Carranza was physically disabled and unable to work. It also shows that he suffered anxiety and severe mental distress. Mr. Carranza received Social Security benefits because of his disability. Mrs. Carranza provided the preparer with Mr. Carranza's substantial medical records that reflected a pattern of illness and physical conditions that could have been related to his working conditions. The preparer's conclusion, which was based upon the information petitioners provided, was that Mr. Carranza's disability and hence the Spears settlement were due to physical injury and that the settlement proceeds were excludable from gross income under section 104. The preparer reached this conclusion in view of a Form 1099-MISC reflecting miscellaneous income of $97,500. We also note that Mr. Carranza did not receive a Form 1099-MISC for the $65,000 paid to the attorney. As noted earlier in this opinion, there is

a reasonable amount of evidence that could support the conclusion that Mr. Carranza's physical condition (injury) was work related.

With respect to the Social Security benefits, once the preparer concluded that the $97,500 settlement Mr. Carranza received was excluded from petitioners' 2003 income, the Social Security benefits would not have been includable in petitioners' income. Although the preparer's failure to report the benefits does not strictly follow usual reporting protocol, it was reasonable for petitioners, who were not versed in such matters, to rely on the preparer's judgment in the preparation of their income tax return.

We therefore hold that petitioners are not liable for an accuracy-related penalty under section 6662(a).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>